**MALBIN & BULLOCK, INC., Appellant . (Defendant Below),**

v.

**Thomas HILTON, Appellee (Plaintiff Below).**

**No. 1–578A106A.**

Court of Appeals of Indiana, First District.

March 19, 1980.

Robert A. Garelick and William M. Pope, Maurer, Garelick, Cohen & Frank, Indianapolis, for appellant.

Kent M. Frandsen, Parr, Richey, Obremskey & Morton, Lebanon, Thomas E. Q. Williams, Greenfield, for appellee.

ROBERTSON, Presiding Judge.

This appeal arises out of a judgment and proceedings supplemental for Thomas Hilton (Hilton), plaintiff-appellee, against Malbin & Bullock, Inc. (M & B, Inc.), defendant-appellant, said judgment based on amended findings of fact and conclusions of law as directed by this court, pursuant to Ind. Rules of Procedure, Appellate Rule 15(N)(4), reported at 387 N.E.2d 1332.

We affirm.

We repeat the pertinent facts as supplemented by the trial court's amended findings. Hilton was the lessee of M & B, Inc. at certain premises in Indianapolis from 1968 until May of 1975 when he was removed. Hilton ran a retail boat sales business on the premises. In August of 1974, the building used for the business was partially burnt down. M & B, Inc. had been holding the land and building for potential use as a site for one of the corporations's furniture stores and was unconcerned about

the existing buildings on the land. Thus, the buildings were uninsured. The trial court found that Robert Malbin, acting for and on behalf of the corporation, contracted with Hilton to make repairs to the premises and further agreed that Hilton would be compensated for the cost of such labor and materials.

During this period, M & B, Inc. had its inventory note called by its creditor-bank and the corporation was essentially forced out of business. In order to carry out a liquidation of assets, in February of 1975, there occurred a transfer of all the assets of the corporation to Malbin and Bullock either as individuals or as a partnership.

Hilton presented an invoice of materials and labor for work done and not being paid, brought a mechanic's lien suit on November 7, 1975. A second count was added to the suit against Malbin individually on the basis of his dealings with Hilton.

On January 12, 1976, Malbin and Bullock sold the land in question as individuals (the land had been transferred to them from the corporation on February 21, 1975) to a third party. In order to protect the purchasers, Malbin and Bullock and the purchasers created an escrow account from part of the proceeds of the sale in the amount of $10,-984 to be paid to Hilton if he won the mechanic's lien suit and to be paid to Malbin and Bullock, as individuals, if Hilton did not win the suit.

Judgment was had against M & B, Inc. only on the theory of an express contract to pay Hilton for his work. The trial court found that the mechanic's lien failed because of untimely notice. Proceedings supplemental hearings were had to determine if Hilton could garnish the escrow account. The court found that it could and M & B, Inc. brings this appeal.

■ M & B, Inc. first raises the question of whether the trial court correctly determined that Hilton could reach the escrow account in proceedings supplemental to the judgment.

It was stated in *Hopple v. Star City Elevator Co., Inc.*, (1967) 140 Ind.App. 561, 224 N.E.2d 321:

Generally, on proceedings supplementary to execution, the burden of proof is upon the judgment creditor. He must show affirmatively that the property sought to be reached is subject to execution, although where a judgment debtor admits that money was realized by sale of premises in which he was interested he has the burden of showing what disposition was made of the proceeds of such sale. 13 I.L.E. Execution, § 159, pp. 317–318; *Sherman et al v. Carvill* (1880), 73 Ind. 126, 127; *Lowry v. McAlister* (1882), 86 Ind. 543, 544.

The question for us to resolve is whether the trial court erred in finding that the property in escrow was that of the judgment-debtor, M & B, Inc.

The trial court in its order of garnishment referred to Malbin and Bullock, as individuals, as "successors" of Malbin and Bullock, Inc. We agree with the characterization of the trial court.

We review the evidence. The trial court found a contract was formed between the corporation and Hilton in which Hilton would be compensated for repairs on the property. During this time, M & B, Inc. was forced to dispose of its assets because of a secured creditor. In order to accomplish this, the corporation transferred its assets to the shareholders, Malbin and Bullock, as individuals, or as partners. Thus, on February 21, 1975, the corporation transferred title to the land to Malbin and Bullock, as individuals. The land was then sold to a third party. However, knowing of Hilton's pending litigation an escrow account was set up in the principal amount of $10,984.

■ We have no problems in defining Malbin and Bullock or their partnership as a "successor" of the liabilities of M & B, Inc. Malbin's own testimony indicates that the change from a corporation to a partnership was a "sale to satisfy creditors" and "The purpose of the bulk sale was to satisfy a bank loan."

■ M & B, Inc.'s attempt to hide behind the Bulk Transfer Article of the UCC, Ind.

Code 26–1–6, is of no avail. It was M & B, Inc.'s burden to show that the transaction fell under this section and that Hilton was deprived by it from pursuing the assets of the corporation. The trial court could have found that the transaction was excluded from IC 26–1–6 by IC 26–1–6–103(3) which exempts "[t]ransfers in settlement or *realization* of a lien or other security interest." [Our emphasis.] Or the trial court could have found that Hilton was a creditor who had not received notice. IC 26–1–6–104(2) says notice must be given to persons "who are known to the transferor to assert claims against him *even though such claims are disputed.*" [Our emphasis.] Or the trial court could have found that M & B, Inc. simply did not present enough credible evidence concerning the bulk transfer, as there was no documentary evidence presented.

The trial court could have found under the evidence then, that the corporation changed in form by transferring its assets to the shareholders as individuals or as a partnership in order to meet the payment demanded by its secured creditor and thus the individuals or partnership were indeed the "successors" of the liabilities of M & B, Inc.

There is no question that the funds in the escrow account are proceeds from the sale of property by the successor of M & B, Inc. and thus Hilton has the right to garnish the escrow account. The mere fact that the escrow account was set up to protect the purchasers from a pending mechanic's lien does not make the sums any less the proceeds of the sale of property owned by M & B, Inc.'s successor.

M & B, Inc. next claims as error surprise because it was not named in Count II of the amended complaint, but had a judgment awarded against it on this count. In the same regard, the corporation complains that a monetary judgment was awarded against it although the mechanic's lien failed.

■ We fail to see how M & B, Inc. was surprised at a monetary judgment against it based on the underlying debt. The amended complaint in its final count specifically named the corporation as a defendant and stated, "plaintiff (Hilton) provided labor and material for defendants, and each of them, at Defendants' special instance and request . . . . Wherefore plaintiff demands judgment against the Defendants . . . in the amount of $10,984.00." The amended complaint did also request attorney's fees and a foreclosure of a mechanic's lien, however, the prayer for a judgment on the underlying debt can be fairly read from Count I of the Amended Complaint. It is clear from the amended findings of fact and conclusions of law we requested, that the trial court was awarding judgment on this count, not the second one as the corporation alleges. There was no error here.

■ M & B, Inc. next complain that there was insufficient evidence to support the trial court's finding that there was an express contract for the corporation to compensate Hilton for his rebuilding. Our standard of review of findings made by the trial court is to reverse only if the finding is clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). There was sufficient evidence presented at trial to sustain the trial court's finding that the corporation agreed to compensate Hilton in some manner if he rebuilt the premises. We find no error here.

■ The next two issues raised for review concern evidentiary questions. M & B, Inc. first complains that oral testimony was improperly introduced concerning the amount of labor expense incurred by Hilton in rebuilding when there was presumably better written evidence available in the form of checks. We first note that M & B, Inc. did not object until after the evidence was presented and made no motion to strike. Thus, no error was preserved. *Deming Hotel Co. v. Prox* (1968), 142 Ind. App. 603, 236 N.E.2d 613. Further, even if we were to address this issue, it is generally held that the best evidence rule as to documents, which is what we presume the corporation is relying on, applies only when the document is in issue, not when it is of collateral significance. *See generally* Fed.

Rules of Evidence 1004(4); *see also State v. Vaughan* (1962), 243 Ind. 221, 184 N.E.2d 143. Here, the checks would have been better evidence of the amount of money expended on labor, but oral evidence is certainly not inadmissible here under the best evidence rule.

The second issue concerning evidentiary matters is whether evidence was improperly refused by the trial court. M & B, Inc. offered to prove, through a former employee of Hilton, that Hilton had a bad reputation for veracity in the business community. This evidence was offered after Hilton had testified in his own behalf.

The general rule is that evidence of character is not allowed to show that the person whose character is sought to be shown engaged in certain conduct on a particular occasion. E. Cleary, McCormick's Handbook of the Law of Evidence, § 188, (2d ed. 1972); 1 Wigmore, Evidence, § 64 (3d ed. 1940); *see Niemeyer v. McCarty* (1943), 221 Ind. 688, 695, 696, 51 N.E.2d 365, 367.

In *Peoples Trust & Savings Co. v. Cohen* (1947), 117 Ind.App. 472, 476, 73 N.E.2d 366, 368, it was stated:

It is settled in this state that the evidence of the general reputation of a party is not admissible in a civil action unless his character is in issue. [Citations omitted].

In that case, an action on a bank deposit, the mere contradiction of the testimony of a party did not permit the party to present evidence of his good character.

We are aware of the exception to the general rule given above that a witness can be impeached by his reputation for mendacity in the community. We think the trial court is given discretion in admitting or rejecting such testimony and we will reverse only where an abuse of discretion is shown. *Smith v. Crouse-Hinds Co.* (1978), Ind.App., 373 N.E.2d 923, 926. The trial court here no doubt considered the probability that the evidence would have unduly provoked a side issue that would have unnecessarily burdened the trial court. *See*

*Smith v. Crouse-Hinds, supra* at 926; Fed. Rules of Evidence, Rule 403. As stated in *Peoples Trust*, 117 Ind.App. at 479, 73 N.E.2d at 369, if this evidence was uniformly admitted "much of the time of the courts would be taken up with the attack and support of character witnesses, and it would result in a definite retrogression of trial procedure."

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.