**H. Pete HUDSON, Insurance Commissioner of Indiana, Appellant (Garnishee defendant below),**

v.

**Eric L. TYSON, Appellee (Judgment plaintiff below).**

**No. 2–377A88.**

Court of Appeals of Indiana, Second District.

May 20, 1980.

Rehearing Denied June 26, 1980.

Theodore L. Sendak, Atty. Gen., Jane M. Gootee, Deputy Atty. Gen., Indianapolis, for appellant.

Miller & Miller, William B. Miller and Jacob S. Miller, Indianapolis, for appellee.

SHIELDS, Judge.

Hudson appeals the judgment of the trial court applying funds deposited with the Indiana Insurance Department in satisfaction of a judgment obtained by Tyson against Imperial Insurance Company. We affirm with modifications.

Tyson was shot by his bail bondsman in the latter's attempt to bring him into court on an outstanding bench warrant. In an action for damages, Tyson recovered a $10,000 judgment against the bondsman's principal, Imperial Insurance Company. Tyson sought to satisfy his judgment by proceedings supplemental under Indiana Rules of Procedure, Trial Rule 69(E). Tyson alleged Hudson, as Indiana Insurance Commissioner, held property owing to Imperial Insurance Company in the form of a deposit "to secure the payment of judgments on defaulted bail bonds." Hudson was ordered to appear to testify as to property he held belonging to Imperial Insurance Company available for satisfaction of Tyson's judgment. After a hearing, the trial court ordered funds deposited by Imperial with the Insurance Department applied to satisfy the judgment.

I

*Procedural Errors*

Tyson argues procedural errors made by Hudson in seeking appellate review require either the dismissal or summary affirmance of this appeal. This court previously considered Tyson's motion to dismiss in which he argued certain procedural errors preclud-

ed Hudson from appellate review. *See Hudson v. Tyson*, (1978) Ind.App., 383 N.E.2d 66.

■ Along with his motion to dismiss Tyson requested an extension of time to file his appellee's brief, which was granted in part because of Tyson's averment in his verified petition that his brief would consider only the merits of the appeal, all motions to dismiss having been filed. By requesting an extension of time to file his brief on the merits, Tyson waived consideration of any procedural errors not alleged in his motion to dismiss. *See* Indiana Rules of Procedure, Appellate Rule 14(B); *Clyde E. Williams and Associates, Inc. v. Boatman*, (1978) Ind.App., 375 N.E.2d 1138, 1140.

## II

### Consideration of the Merits

■ Hudson initially urges the trial court erroneously denied his motion to dismiss[1] challenging Tyson's failure to join an indispensable party under Indiana Rules of Procedure, Trial Rule 19. Hudson has waived any error, however, by failing to assert it in his motion to correct errors. Indiana Rules of Procedure, Trial Rule 59(G), Appellate Rule 7.2(A)(1)(a). By choosing to perfect his appeal of the order in proceedings supplemental through a motion to correct errors, Hudson must limit his appeal to errors asserted therein. *See Hudson v. Tyson*, 383 N.E.2d at 72.

■ Hudson next attacks the judgment of the trial court as contrary to law and unsupported by the evidence.[2] In pro-

ceedings supplemental to execution, the trial court is empowered

" . . . [u]pon the hearing, . . . [to] order any property . . . of the judgment debtor, not exempt from execution, in the hands either of himself or of any other person, or any debt due to the judgment debtor, to be applied to the satisfaction of the judgment . . . ." IC 34–1–44–7 [Burns Code 1973 Ed.]

■ Tyson, as judgment creditor, at the hearing had the burden of proving the funds in question were available for execution. *Malbin and Bullock, Inc. v. Hilton*, (1980) Ind.App., 401 N.E.2d 719; *Hopple v. Star City Elevator Co., Inc.*, (1967) 140 Ind. App. 561, 224 N.E.2d 321. However, on appeal, the trial court's judgment is presumed correct and Hudson must establish error. *See e. g. Indiana Broadcasting Corp. v. Star Stations of Indiana*, (1979) Ind.App., 388 N.E.2d 568, 573.

Hudson challenges the trial court acted contrary to IC 34–1–44–7 and IC 35–4–5–35 [Burns Code 1979 Ed.] concerning insurer deposits,[3] by finding Imperial's deposit was not exempt from execution. He additionally charges that because the deposit was only a contingent obligation the evidence failed to establish Imperial's deposit with the Insurance Commissioner was a debt due judgment debtor under IC 34–1–44–7.

## III

### State Regulation of Insurer Deposits

■ In the exercise of its police power, the State may impose reasonable regula-

---

1. Indiana Rules of Procedure, Trial Rule 12(B)(7).

2. Hudson incorrectly designated his attack as a challenge to the trial court's jurisdiction of the subject matter of the action. The trial court was statutorily empowered with subject-matter jurisdiction of Tyson's action. IC 33–5–35–6 [Burns Code 1975 Ed.], repealed effective October 1, 1979 and replaced by IC 33–5–35.1–4 [Burns Code Ed. 1979 Supp.]. Therefore, as Tyson indicates, Hudson's assertion that the trial court lacked subject-matter jurisdiction is erroneous.

   However, the substance of Hudson's argument, at both the trial and appellate levels, attacks the judgment as contrary to law and unsupported by the evidence. Hudson's mem-

orandum in support of his motion to correct errors fully informed both the trial court and Tyson of the substantive basis of his challenge, which basis remains the same on appeal. Hudson has therefore substantially complied with the purpose of Indiana Rules of Procedure, Trial Rule 59. *See Matter of Geake* (1980) Ind. App., 398 N.E.2d 1375; *Indiana Department of Revenue v. Frank Purcell Walnut Co.*, (1972) 152 Ind.App. 122, 282 N.E.2d 336.

3. Insurer is "any domestic, foreign or alien surety company which has qualified generally to transact surety business . . . and specifically to transact bail bond business in this state." IC 35–4–5–1(2) [Burns Code 1979 Ed.]

tions upon businesses affecting the welfare of its citizens. *See Vernon Fire and Casualty Insurance Co. v. Sharp*, (1976) 264 Ind. 599, at 616, 349 N.E.2d 173, at 184; J. Appleman, 19 Insurance Law and Practice § 10321 (1946). In supervising the conduct of insurance business, the State requires divers deposits with the insurance department. *See e. g.* IC 27–1–12–11, 27–7–3–7. The availability of these funds for execution under IC 34–1–44–7 therefore initially depends upon the provisions of the regulating statute.

Creation and utilization of insurer deposits made pursuant to IC 35–4–5–35 insure prompt payment of all bond forfeitures. As a prerequisite to obtaining a license to engage in bail bond business, IC 35–4–5–35 [Burns Code 1979 Ed.] requires insurers to deposit $75,000 with the Insurance Commissioner "out of which the commissioner shall satisfy judgment on all forfeitures which have not been paid."[4] Indiana Code 35–4–5–12 [Burns Code 1979 Ed.] requires "the commissioner . . . shall . . . [w]ithin fourteen (14) days of receipt of the notice from the clerk satisfy the judgment from funds the insurer . . . has on deposit with the department of insurance." The commissioner is further required to revoke an insurer's license immediately if payment under 35–4–5–12 causes the deposit to fall below the $75,000 minimum required by IC 35–4–5–35.[5]

■ Effective operation of the state's bail system is enhanced by these requirements which provide the insurer with a very real interest in defendants' appearance

in court. Thus, the Department of Insurance is statutorily authorized to release these funds only for the limited purpose for which the deposit was designed—payment of bond forfeiture judgments.[6] Payment of Tyson's judgment against Imperial in a tort action would not therefore be permitted under the above statutes.

In creating the bond-forfeiture deposit, the legislature deferred to general statutory insurance provisions in Title 27 for administration of the funds, IC 35–4–5–35 stating these deposits "shall be subject to all laws, rules and regulations as are deposits by domestic insurance companies." When the purpose for any deposit required by Title 27 is fulfilled, IC 27–1–20–11 [Burns Code 1975 Ed.] requires the department to return any remaining funds to the insurance company.

"When any company determines to discontinue its business and ceases to do business in this state and desires to withdraw its deposit made in this state pursuant to this act [21–1–2–1—27–1–20–32], the department shall upon the application of the company and at the expense of the company give notice of such intention in a newspaper of general circulation in the state once a week for a period of four [4] weeks. After such publication *it shall deliver to such company* or its assigns *the securities so deposited when it is satisfied* upon examination and investigation made by it or under its authority and upon the oaths of the president or a vice-president and the secretary or an assistant secretary of the company *that all debts and*

---

4. "Forfeiture arises when defendant fails to appear as set forth in the bond." IC 35–4–5–12 [Burns Code 1979 Ed.]

5. "[T]he commissioner . . . shall . . . [u]pon satisfying the judgment from funds on deposit immediately revoke the license of the insurer . . . if the satisfaction causes the deposit remaining to be less than the amount required by this chapter . . . . In case the . . . commissioner shall fail or neglect to perform the duties as herein set out, he shall be liable to the state of Indiana for the amount of such judgment, to be charged . . . against the next succeeding and following installments of salary of such official." IC 35–4–5–12.

6. Similar restrictions are placed upon other deposits with the Department of Insurance. *See e. g.* 27–1–12–11 [Burns Code 1975 Ed.] requiring life insurance companies deposit funds "solely for the security and benefit of all its policy holders; IC 27–7–3–7 [Burns Code 1975 Ed.] establishing the title insurance fund representing deposits with the department by title insurance companies, which deposits are returned to the company under IC 27–7–3–16 when it ceases business, satisfying the department that all liabilities on policies have been paid.

*liabilities of every kind due and to become due which the deposit was made to secure are paid and extinguished.*" Emphasis added. IC 27–1–20–11.

The evidence reveals Hudson revoked Imperial's license to do business in Indiana in September, 1975. Thus the contingent event had occurred entitling Imperial to establish its right to return of the deposit and Tyson to establish his right as judgment creditor.

■■ Hudson urges, however, Imperial's right to the funds had vested in a California liquidator. When seeking to enforce a foreign judgment, proponent must establish its existence. *Shane v. Koehler*, (1976) 168 Ind.App. 552, 343 N.E.2d 818. Hudson did testify at the hearing that Imperial "was placed in liquidation" in September, 1975 and alluded to a California court order requiring Imperial to cease operation.[7] However Hudson failed to produce any evidence that this purported order was a valid judgment, in force, or to set forth its contents to enable the trial court to initially determine, and this court to later review, its effect, if any, upon the present proceedings. In fact, Hudson testified that, other than bond forfeiture judgments received since revocation of Imperial's license, he had received no order or lien attaching the funds. Hudson did not meet his burden of establishing the effect of any intervening order.

■■ Cessation of Imperial's business establishes the funds as a debt available for execution under IC 34–1–44–7. At the time of the hearing, the exact amount of the funds due Imperial was unknown, Hudson testifying that, although it was "potentially correct" that his department had been notified of all outstanding bond forfeiture judgments in the few months since Imperial's cessation of business, his experience as Insurance Commissioner would indicate notifi-

---

7. Direct examination of Hudson revealed the following information:

"Q. Well, O.K. You did state, Mr. Hudson, it [75,000] was deposited by the Imperial Insurance Company?
A. That is correct.
Q. Now, have you actually paid out of that fund Fifty-Five Thousand Dollars?
A. No, the total of Fifty-Five Thousand has not been paid out at this time, Mr. Miller.
Q. Well are you saying you received notice of forfeitures of that amount?
A. That's correct. We have forfeitures consisting of some Thirty-five forfeitures totaling approximately Fifty-Five Thousand Dollars. I don't have the immediate figures today. These are forfeitures that have come to us since Imperial was placed in liquidation September 15th, 1975.
Q. When to your knowledge, did Imperial stop doing business in Indiana, stop writing bonds in Indiana either voluntarily or involuntarily?
A. They would have been required, and I assume they did cease to write business upon the order of the Department of Insurance, State of California, their state of domiciliary, which order was issued on September 15, 1975. We have no knowledge of them having written any business since that date. That's probably more responsive.
Q. As of September, 1975, you had knowledge that that particular surety might be insufficient on bonds written in the state, is that correct?
A. Well, all insurance coverages or bond coverages written, yes.
Q. By that company?
A. Yes.
Q. Did you issue any official order to anyone with respect to that company?
A. Oh yes. We suspended their certificate.
Q. That's what I'm getting at.
A. Yes.
Q. And was that in September of 1975?
A. I can't tell you that it was that exact date, Mr. Miller, but at or about that time. It was promptly after notification by the department in California as we could have responded.
Q. All right, so by suspending their certificate you notified the Imperial Insurance Company in California that they could not write bonds here in Indiana, is that correct?
A. Yes. They were ordered, in fact, by the courts in California to cease doing business period."

Cross-examination of Hudson by the State elicited only the following concerning liquidation:
"Q. Mr. Hudson, to your knowledge, when did Imperial Insurance Company go into liquidation?
A. I think the court order was about September 15, 1975."

cation of these judgments would require two to five years.[8] The trial court therefore erred by ordering immediate attachment of the funds to satisfy Tyson's judgment.

In framing an order of execution, the trial court may utilize its equitable powers. Indiana Code 34–1–44–7 allows it "full power to enforce all orders and decrees . . . by attachment or otherwise." Therefore the trial court should have entered a final order attaching any funds due Imperial under IC 27–1–20–11 when payment has been made of all bond forfeiture judgments for which Imperial is liable in accordance with its statutory deposit. Further, this court can modify the trial court's judgment to so provide pursuant to Indiana Rules of Procedure, Appellate Rule 14(E).

We therefore affirm the trial court's judgment except that portion ordering immediate attachment of Imperial's funds. Because four years and eight months have now elapsed since the revocation of Imperial's license to do business in Indiana, there is a high probability that Imperial's outstanding bail bonds have matured and Hudson has been notified of any bond forfeiture judgments. Therefore, upon remand we further order the trial court to immediately conduct a hearing to determine if Imperial has any continuing exposure under IC 35–4–5–35. This can be determined by the existence of any bail bonds in full force written by Imperial prior to ceasing business in Indiana.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents with opinion.

BUCHANAN, Chief Judge, dissenting.

I respectfully dissent because this case should be dismissed on procedural grounds.[1] In my dissent when this case was previously before us, *Hudson v. Tyson* (1978), Ind.App., 383 N.E.2d 66, I concluded that this appeal was not timely because it should be treated as an appeal from an interlocutory order, and the record was not filed within the 30 day time limit required by Indiana Rules of Procedure, Appellate Rule 3(B).

My reasons for this conclusion are more fully set out in my prior dissent, the essence of which is that proceedings supplemental are a continuation of the original cause of action, *Citizens National Bank of Grant County v. Harvey* (1976), 167 Ind.App. 582, 339 N.E.2d 604; *Linton v. Linton* (1975), 166 Ind.App. 409, 336 N.E.2d 687, 339 N.E.2d 96; *Myers v. Hoover* (1973), 157 Ind.App. 310, 300 N.E.2d 110, and an appeal therefrom is interlocutory in nature and is not an appeal from a final judgment. *Protective Insurance Co. v. Steuber* (1977), Ind. App., 370 N.E.2d 406. Thus, we have no jurisdiction and this appeal should be dismissed.

---

**8.** Hudson testified that since September 1975 the department had received $55,000 in bond forfeiture judgments against the $75,000 which Imperial had deposited with the department pursuant to IC 35–4–5–35. Under IC 35–4–5–12 Hudson was required to revoke Imperial's license and notify all county clerks of the revo-

cation when payment of bond forfeiture judgments caused insurer's deposit to fall below $75,000.

**1.** This case was decided prior to the recent amendments to the Indiana Rules of Procedure, effective January 1, 1980.