**INDIANA BELL TELEPHONE COMPANY, INC.,**
Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9205–TA–00034.

Tax Court of Indiana.

Jan. 28, 1994.

Michael B. Cracraft, Thomas F. Bedsole, Hackman, McClarnon, Hulett & Cracraft, A. David Stippler, in-house counsel, Indiana Bell Telephone Co., Inc., Indianapolis, for petitioner.

Pamela Carter, Atty. Gen. of Indiana, Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Indiana Bell Telephone Company, Inc. (Indiana Bell), appeals the final determination of the Respondent, the Indiana Department of State Revenue (the Department), denying Indiana Bell's claim for refund of gross retail tax paid for 1988 on White Pages Telephone Directories (Directories).

### ISSUE

Whether Indiana Bell's purchase of Directories, for distribution to its customers pursuant to the Indiana Utility Regulatory Commission's regulation and tariff provisions, is exempt from gross retail tax under IND. CODE 6–2.5–5–8 as a "sale for resale, rental or lease."

### FACTS

Indiana Bell, an Indiana corporation, is a public utility that provides telecommunication services in the state of Indiana. Indiana Bell contracted with Ameritech Publishing, Inc. to print its Directories. In 1988, Indiana Bell paid sales tax on the Directories totalling $163,067.11.

Under the terms established by the Indiana Utility Regulatory Commission (IURC), Indiana Bell is required to transfer the Directories and replacement Directories free of charge to local access customers and to its pay-telephones.[1] Indiana Bell includes the cost of the Directories in its operating costs, which are in turn recovered by its customers' monthly service charges and usage charges for pay-telephones. Indiana Bell has the discretion to charge its customers a reasonable amount for any additional or foreign exchange Directories.

Indiana Bell timely filed its claim for refund of $161,979.11,[2] which the Department denied by letter dated February 24, 1992. Indiana Bell now appeals. Additional facts will be provided as necessary.

### STANDARD OF REVIEW

In an appeal from the Department's denial of a claim for refund, "[t]he tax court shall hear the appeal de novo...." IND.CODE 6–8.1–9–1(d). The scope of review extends beyond the issues argued at the administrative level, *see Hoosier Energy Rural Electric Coop., Inc. v. Indiana Department of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, *aff'd* (1991), Ind., 572 N.E.2d 481, *cert. denied* (1991), — U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277. In cases involving exemptions from tax, the burden of showing that the terms of the exemption are met lies with the taxpayer. *General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 404, *aff'd* (1992), Ind., 599 N.E.2d 588 (quoting *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 767, *aff'd* (1992), Ind., 587 N.E.2d 1311).

---

**1.** Tariff P.S.C.I. No. T–7, Part I, Section 2, First Revised Sheet 27 provides that "[t]he Telephone Company will furnish to its customers without charge, one directory for each main station or trunk, and upon request, additional directories not to exceed the total number of extension stations furnished under this Tariff. Additional or foreign directories shall be provided at a reason-able fee, when available." *See also* 170 I.A.C. 7–1.1–9(B).

**2.** Counsel for Indiana Bell stated the discrepancy in the amount of tax paid and the amount of refund claimed was attributable to the inadvertent omission of some of the invoices. *Transcript* at 17.

Moreover, exemption statutes are to be strictly construed; however, they are not to be so narrowly construed as to fail to give proper effect to the legislative intent. *Indiana Dep't of State Revenue v. Indianapolis Public Transp. Corp.* (1990), Ind., 550 N.E.2d 1277, 1278, *aff'g* (1987), Ind.Tax, 512 N.E.2d 906. *See also Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580, *aff'd* (1992), Ind., 585 N.E.2d 1336.

### DISCUSSION AND DECISION

■ Indiana Bell maintains its purchase of the Directories is exempt from the gross retail tax as a purchase for resale under IC 6–2.5–5–8. "Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for resale, rental, or leasing in the ordinary course of his business without changing the form of the property." IC 6–2.5–5–8. *See also* 45 I.A.C. 2.2–5–15(a). It is undisputed that Indiana Bell neither changed the form of the Directories prior to their distribution nor rented or leased the Directories to its customers. Indiana Bell, therefore, must show it purchased the Directories for resale in the ordinary course of business to qualify for the exemption.

In *Indiana Department of State Revenue v. Hertz Corp.* (1983), Ind.App., 457 N.E.2d 246, the court of appeals held bulk purchases of fuel by an automobile lessor, to be resold to lessees, qualified for the gross retail tax exemption. The fact that Hertz was not primarily in the business of providing gasoline did not deny the exemption. Hertz made the purchases in the ordinary course of its overall business, and that was sufficient. A sale in the ordinary course of business is not an isolated, nonrecurring sale. *Monarch Beverage Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 589 N.E.2d 1209, 1211. Because Indiana Bell's purchase of Directories is not isolated and recurs on an annual basis, it purchases the directories in the ordinary course of its business. The question remains whether Indiana Bell purchased the Directories for resale.

[T]he Indiana Uniform Commercial Code (the UCC), IND.CODE 26–1–1–101. *et. seq.*, defines a 'sale' as 'the passing of title from the seller to the buyer for a price (IC 26–1–2–401 [ (2), which defines when title passes] ).' IND.CODE 26–1–2–106(1). The UCC's definition follows 'the common definition of a sale as a trade-off of title to property for consideration.' *Washington Nat'l Corp. v. Sears, Roebuck & Co.* (1985), Ind.App., 474 N.E.2d 116, 121, *trans. denied.*

*Id.* at 1213 (footnote omitted). The elements of a sale are mutual assent between parties, passage of title, and consideration.[3] *Id.*

The negotiations between Indiana Bell and the IURC led to mutual assent, as evidenced by Tariff P.S.C.I. No. T–7, Part I, Section 2, First Revised Sheet 27. *See Citizens Action Coalition v. Northern Indiana Public Service Co.* (1985), Ind., 485 N.E.2d 610, 614; *Public Service Comm'n v. Indiana Bell Telephone Co.* (1955), 235 Ind. 1, 31, 130 N.E.2d 467, 481. Title and control pass to the customer upon receipt of the Directory and consideration is received from the customer in pay-telephone charges and each monthly service charge payment. The analysis does not, however, end here. But for the role of the IURC, this case is similar to *USAir, Inc. v. Indiana Department of State Revenue* (1989), Ind.Tax, 542 N.E.2d 1033, *aff'd* (1991), Ind., 582 N.E.2d 777. In *USAir,* an airline sought an exemption of use tax imposed on food purchased for passengers and crews as meals and snacks. The airline claimed it purchased the food for resale under IC 6–2.5–5–8. The passengers did not negotiate the meal content, meal cost, or even whether they wanted a meal. Furthermore, the ticket price did not reflect an itemized cost for the meal. The court denied the purchase for resale exemption.

■ Indiana Bell acknowledges that its transfer of Directories is similar to USAir's provision of meals and snacks. Indiana Bell maintains, however, that because the IURC regulates its charges, services, and transfer of Directories, there is a significant difference in the "resale" determination. The court, however, disagrees. The substance

---

**3.** Consideration may exist in forms other than a monetary payment. *Id.* at 1213–14.

rather than form of a transaction determines its tax consequences. *Mason Metals Co. v. Indiana Dep't of State Revenue* (1992), Ind. Tax, 590 N.E.2d 672, 675.

The IURC functions as a regulator of public utilities, necessary in order for the utility to enjoy the monopoly it has been granted. *Citizens Action Coalition,* 485 N.E.2d at 614; *Indiana Bell Telephone Co.,* 235 Ind. at 31, 130 N.E.2d at 481. The IURC regulates the charges imposed and profits received by Indiana Bell and requires Indiana Bell to provide certain services and products. Specifically, the IURC requires Indiana Bell to transfer the Directories as part of the grant of the monopoly. The IURC's involvement does not, however, hinder Indiana Bell from recovering the cost of the Directories. While the tariff in the case at bar states that directories are to be transferred at no charge, Indiana Bell is permitted to include the cost of the directories as part of its operating expense, which is passed on to the customer in the monthly bill. Indiana Bell passes the pro-rated share of the total cost of the Directories to each customer, rather than a cost attributable to actual usage or consumption. The monthly bills do not itemize the pro-rated cost of the Directories. As in *USAir,* the court would strain the definition of "resale" to find a resale occurs when a customer pays an averaged and nonitemized amount without regard to the number of directories received.

The court stated in *USAir:*

To subdivide the cost of the ticket into percentages to cover the various services rendered by the airline in order to reach the artificial conclusion that there is a sale

is to strain the meaning of the term "resale." When a passenger buys a ticket he buys many services, including baggage handling, the services of flight attendants, and in appropriate cases, meals. In addition, a portion of his ticket goes to purchase gasoline and the services of flight personnel. It is artificial to attempt to divide this package of services into separate sales and say that one of them is the sale of meals furnished to passengers.

*USAir,* 542 N.E.2d at 1035 (quoting *Air Jamaica Ltd. v. State Dep't of Revenue* (Fla. Dist.Ct.App.1979), 374 So.2d 575, 578–79). Likewise, when a person becomes a customer of Indiana Bell, that person reaps the benefits of many services, including repair services, transmission power and lines, long distance operators, advertising, Directories, traffic service, as well as the ability to communicate across the lines. As in *USAir,* it is artificial to divide this package of services into separate sales and say one of them is the sale of Directories to a customer. Simply put, Indiana Bell provides a service and transfers Directories as part of that service.[4]

### CONCLUSION

The court AFFIRMS the Indiana Department of State Revenue's denial of Indiana Bell Telephone Company, Inc.'s claim for refund.

---

**4.** At the court's request, the parties addressed whether IND.CODE 6–2.5–4–6(b) had any applicability to this case. Upon review of the parties

response and further consideration of the statute, the court concludes that it does not.