**James P. KOUFOS and Barbara J. Koufos, Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 45T10–9403–TA–00098.

Tax Court of Indiana.

Feb. 14, 1995.

Demetri J. Retson, Kevin E. Steele, Burke, Murphy, Costanza & Cuppy, Merrillville, for petitioners.

Pamela Carter, Atty. Gen., Marilyn Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

James P. Koufos and Barbara J. Koufos (the Koufoses) appeal the final determination of the Indiana Department of State Revenue (the Department) disallowing a deduction for interest paid on a mortgage acquired to develop rental property before determining their Indiana adjusted gross income.

### ISSUE

This case presents one issue: whether interest paid on a mortgage acquired to develop rental property continues to be "attributable to property held for the production of rents or royalties" under 26 U.S.C.A. § 62(a)(4) after the property is sold.

## FACTS AND PROCEDURAL HISTORY

### A. The Apartment Complex

The Koufoses have a 50 percent interest in a partnership (Partnership) that undertook to develop and operate an apartment complex in Schererville, Indiana. The Partnership acquired real property upon which to build the apartment complex in 1968. It then obtained a series of mortgage loans (Mortgage Loans) from various savings and loans associations (Mortgage Lenders) and used the proceeds of the loans to construct several buildings in the apartment complex. Construction of the apartment complex began in 1970 and was completed in 1979. Upon completion, the apartment complex included 576 residential units.

The Partnership operated the apartment complex as rental property from 1970 to July 21, 1981, and received rental income during that period. On July 21, 1981, the Partnership sold the apartment complex to Balcor Equity Properties Limited—VII (Balcor) for $15,691,485.

To facilitate the sale, the Partnership provided Balcor with "wraparound" financing. Thus, under the terms of the sale and financing agreement, Balcor tendered $4,418,562.61 cash at closing and executed a promissory note to the partners of the Partnership in the amount of $10,789,000. The Partnership transferred the apartment complex to Balcor by warranty deed and Balcor mortgaged the apartment complex back to the Partnership to secure its obligations under the promissory note.

At the time of the sale, the Partner's Mortgage Loans, having a principal balance of $8,601,992.33, were not discharged. Balcor assumed no obligations with respect to the Mortgage Loans and the Partnership remained solely liable for payments on those loans. The parties agreed, however, that Balcor would make payments on the Mortgage Loans directly to the Mortgage Lenders in order to satisfy part of its obligation under the promissory note. Accordingly, the promissory note was drafted so that Balcor's payments on the Mortgage Loans would discharge in the same amounts: 1) the principal and interest owed by the Partnership to the Mortgage Lenders, and 2) the principal and interest owed by Balcor to the Partnership under the promissory note. The remaining balance due by Balcor under the promissory note was approximately $2.2 million. The parties agreed that Balcor would pay the remaining balance, plus interest thereon, in monthly installments directly to the Partnership. Thus, since 1981, Balcor has made two payments every month—one to the Mortgage Lenders and one to the Partnership.

In 1988, the Balcor debt was the only substantial asset of the Partnership. Likewise, its obligations under the Mortgage Loans were its only substantial liabilities. The Partnership received no rental income from the apartment complex in 1988. It did, however, receive $954,740 in interest income from the sale of the apartment complex. The Koufoses share of that interest income was $477,370.

### B. The 1988 Tax Returns

On line 8a of their 1988 Federal Individual Income Tax Return (Form 1040), the Koufoses reported $481,334 gross interest income. Of that amount, $477,370 was interest income from the sale of the apartment complex and included: 1) $424,225 in interest paid by Balcor to the Mortgage Lenders, and 2) $53,-145 in interest paid by Balcor directly to the Partnership. On their Schedule A attachment, the Koufoses reported deductible investment interest in the amount of $433,975, which included the $424,225 in interest paid by Balcor to the Mortgage Lenders. The Koufoses reported a federal adjusted gross income of $391,074.

On line 2 of their 1988 Indiana Individual Income Tax Return (Form IT–40), the Koufoses reported $57,109 in interest income. That figure represented the Koufoses' gross interest income of $481,332 less the $424,225 in interest paid by Balcor to the Mortgage Lenders, or the Koufoses' *net* interest income. The Koufoses reported an Indiana adjusted gross income of *minus* $23,664.

On January 16, 1992, after reviewing the Koufoses' Form IT–40 and Form 1040, the Department determined that the income reported on the Form IT–40 did not agree with the income reported on the Form 1040.

Consequently, the Department assessed the Koufoses an additional income tax of $14,403.28, plus penalty and interest. The Koufoses filed a written protest. On June 3, 1992, the Problem Resolution Office determined that the Koufoses could not deduct the interest paid to the Mortgage Lenders from their gross interest income at line 2 of their Form IT-40. The Problem Resolution Office explained that the interest was deductible only as a federal itemized deduction and that federal itemized deductions may not be subtracted from federal adjusted gross income to arrive at Indiana adjusted gross income.

The Koufoses requested an administrative hearing. An administrative hearing was held, and on December 14, 1993, the Department issued a final determination upholding the assessment. On March 14, 1994, the Koufoses filed this appeal. The case is now before the court on the Koufoses' motion for summary judgment.

### STANDARD OF REVIEW

A motion for summary judgment may be granted "only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1224. *See also* Ind.Trial Rule 56(C). "If no genuine issue of material fact exists, either the movant or the non-movant may be granted summary judgment." *Harlan Sprague Dawley*, 605 N.E.2d at 1224. All facts and any inferences drawn from those facts, however, will be viewed in a light most favorable to the non-movant. *Knauf Fiber Glass GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 961.

The facts of this case are undisputed and the court is asked only to determine the legal significance of those facts. Consequently, this case is particularly amenable to summary judgment. *Id.*

### DISCUSSION AND ANALYSIS

#### A. The Law

Indiana imposes a tax on income earned by individuals at the rate of 3.4% of their Indiana adjusted gross income. IND.CODE 6-3-2-1. Indiana adjusted gross income is defined as federal adjusted gross income subject to certain Indiana modifications.[1] IND. CODE 6-3-1-3.5. Federal adjusted gross income is defined in Section 62 of the Internal Revenue Code. It provides:

> (a) GENERAL RULE.—For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:
>
> \* \* \* \* \* \*
>
> (4) DEDUCTIONS ATTRIBUTABLE TO RENTS AND ROYALTIES.—The deductions allowed by part VI (sec. 161 and following), ... which are attributable to property held for the production of rents or royalties.

26 U.S.CA. § 62.

Part VI of the Internal Revenue Code contains the various federal itemized deductions that are available to individuals and includes a deduction for "interest paid or accrued within the taxable year on indebtedness," subject to limitations on personal and investment interest. 26 U.S.C.A § 163(a), (d) and (h). Itemized deductions play no role in calculating federal adjusted gross income. *See* § 62. Under § 62(a)(4), however, a § 163(a) itemizable interest expense that is "attributable to property held for the production of rents or royalties" *must* be deducted from gross income before arriving at federal adjusted gross income. *See also Koshland v. C.I.R.* (1953), U.S.Tax Ct., 19 T.C. 860, *aff'd* (1954), 9th Cir., 216 F.2d 751. Thus, § 62(a)(4) "converts" a § 163(a) itemizable interest expense into a deduction from gross income before arriving at federal adjusted gross income when the interest expense is "attributable to property held for the production of rents or royalties."

#### B. The Dispute

Because federal adjusted gross income is used as the computational starting point in

---

**1.** None of the Indiana modifications applied to the Koufoses in 1988. *See Transcript of Hearing* at 13.

determining Indiana adjusted gross income, *see* I.C. 6–3–1–3.5, it is necessary to ascertain the bounds of § 62(a)(4) in order to determine whether the Koufoses properly determined their Indiana adjusted gross income. The parties agree that if the Koufoses had owned the apartment complex in 1988, the interest paid to the Mortgage Lenders would have been attributable to "property held for the production of rents or royalties" under § 62(a)(4). They disagree, however, as to whether the interest paid to the Mortgage Lenders continued to be "attributable to property held for the production or rents or royalties" under § 62(a)(4) *after the apartment complex was sold.* It is the Department's position that after the apartment complex was sold, the interest paid to the Mortgage Lenders could be deducted only under § 163(a).

Neither the Internal Revenue Service nor any court has specifically addressed the issue in this case. Nevertheless, the plain language of § 62(a)(4) and the structure of the federal tax forms establish that once rental property is sold, any interest paid on a mortgage acquired to develop that rental property is not "attributable to property held for the production of rents or royalties."

### C. The Plain Language of § 62(a)(4)

■ It is a well established rule of statutory construction that words and phrases shall be given their plain, ordinary, and usual meaning. *See C.I.R. v. Soliman* (1993), —— U.S. ——, ——, 113 S.Ct. 701, 705, 121 L.Ed.2d 634, 643. *See also Johnson County Farm Bureau Coop. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 581, *aff'd* (1992), Ind., 585 N.E.2d 1336. In this case, the court is called on to construe the meaning of the phrase "attributable to property held for the production of rents or royalties." A key word in that phrase is the word "held." The word "held" is the past tense of the word "hold," which is defined as "to retain in one's keeping," "maintain possession of," "not to give up or relinquish," "possess." *Webster's Third New International Dictionary* 1078 (1981).

When the Partnership sold the apartment complex to Balcor in 1981, it relinquished both ownership and possession of the apart-

ment complex. Consequently, the Koufoses did not "hold" the apartment complex or the production of rental income in 1988. Because the Koufoses did not "hold" the apartment complex in 1988, interest paid on the Mortgage Loans in 1988 was not "attributable to property *held* for the production of rents or royalties." Instead, the interest paid on the Mortgage Loans was attributable to the Partnership's decision to provide "wraparound" financing in order to facilitate the sale of the apartment complex. In other words, after the apartment complex was sold, the interest paid on the Mortgage Loans ceased to be an expense attributable to the rental of the apartment complex and became an expense attributable to the Koufoses' investment portfolio.

### D. The Forms

The federal tax forms are designed to implement federal tax law. While the forms do not constitute federal tax law, they illustrate how federal tax law is to be applied.

The Schedule E attachment to the Form 1040 is used to report rental income or loss. It permits taxpayers to deduct from their gross rental income or loss certain expenses attributable to their rental property (including mortgage interest paid to banks) in order to arrive at their net rental income or loss. Taxpayers transfer their net rental income or loss from the Schedule E to line 18 of the 1988 Form 1040. Accordingly, any interest paid on a mortgage that is "attributable to property held for the production of rents or royalties" under § 62(a)(4) is deducted from gross income before arriving at federal adjusted gross via Schedule E. The Koufoses did not receive rental income or suffer rental loss on the apartment complex in 1988. Consequently, they could not deduct the interest paid to the Mortgage Lenders before arriving at their federal adjusted gross income via the Schedule E.

The Schedule B attachment to the Form 1040 is used to report interest income. It permits taxpayers to deduct from their gross interest income certain types of tax-exempt interest income in order to arrive at net interest income, which is transferred to line 8a of the 1988 Form 1040. Interest income

that is used to pay an interest expense is not tax-exempt and must be included in net interest income. Thus, the Koufoses could not deduct the interest paid to the Mortgage Lenders before arriving at their federal adjusted gross income via the Schedule B.

Finally, the Schedule A attachment to the Form 1040 is used to report itemized deductions allowed under Part VI of the Internal Revenue Code. As previously noted, taxpayers are permitted to itemize "interest paid or accrued within the taxable year on indebtedness," subject to limitations on personal and investment interest. § 163(a), (d) and (h). Accordingly, the Koufoses were permitted to (and did) deduct the interest paid to the Mortgage Lenders as an itemized deduction on their Schedule A attachment.

Although the Koufoses deducted the interest paid to the Mortgage Lenders as an itemized deduction on their Schedule A attachment, they, nevertheless, argue that the interest was deductible under § 62(a)(4). Implicit in the Koufoses' argument is the notion that the federal forms are flawed—that is, the federal forms should have, but did not, provide a line on either a schedule or the Form 1040 at which they could deduct the interest paid to the Mortgage Lenders before arriving at their federal adjusted gross income. *See Transcript of Hearing* at 8. The Koufoses seem to suggest, however, that the flaws in the federal forms are mitigated by the fact that their federal tax liability remains the same regardless of whether the interest is deducted before arriving at federal adjusted gross income or as an itemized deduction. *See Transcript of Hearing* at 15.

In any event, the Koufoses explain that the only reason they reported the interest paid to the Mortgage Lenders as an itemized deduction is because the federal forms require taxpayers to report deductible investment interest[2] on their Schedule A attachments as a safeguard to insure that taxpayers do not deduct more investment interest than permitted under § 163(d).[3] Specifically,

they explain that when interest income is received by a Partnership, the interest must be reported on the Schedule K–1 attachment of the Partnership Income Tax Return (Form 1065). The Schedule K–1, in turn, instructs taxpayers to list the interest on their Form 4952, which is used to limit the amount of investment interest that may be deducted under § 163(d). After completing Form 4952, taxpayers are instructed to report their deductible investment interest on the Schedule A attachment. This rather complicated scheme of transferring numbers from one form to another, the Koufoses insist, establishes that investment interest is reported on the Schedule A only to insure that taxpayers do not deduct more investment interest than permitted under § 163(d). It does not establish, they insist, that the interest was not deductible under § 62(a)(4).

■ While the Koufoses' argument is creative, the problem is not with the federal forms, but with the Koufoses' interpretation of the law. If § 62(a)(4) contemplated that interest paid on an indebtedness incurred to develop rental property continued to be "attributable to property held for the production of rents or royalties" after the property was sold, the forms could have been designed to implement the law accordingly. The Schedule E or B could have been designed to "net out" such investment interest before transferring it to the Form 1040. The Form 4952 could have instructed taxpayers to transfer their deductible investment interest to the Form 1040 as an adjustment to income. Likewise, the Schedule A could have instructed taxpayers to transfer their deductible investment interest to the Form 1040 as an adjustment to income. Thus, there were a number of ways that the federal forms could have been designed to allow taxpayers like the Koufoses to deduct investment interest from the sale of rental property before arriving at their federal adjusted gross income. The federal forms, however, were not so designed which suggests that § 62(a)(4) was not intended to apply to the Koufoses'

---

**2.** "Investment interest" includes "interest expense properly allocable to portfolio income under the passive loss rule." [1995] 3 Stand.Fed. Tax Rep. (CCH) ¶ 9102. Thus, the interest paid to the Mortgage Lenders is "investment interest."

**3.** § 163(d) permits individual taxpayers to deduct investment interest only to the extent of their net investment income in any taxable year.

situation. Further, if investment interest was reported on Schedule A only to insure that taxpayers do not deduct more investment interest than allowed under § 163(d), Schedule A would not have taxpayers include their investment interest in the sum of their itemized deductions for taxpayers would get the benefit of deducting investment interest twice—once under § 62(a)(4) and once as an itemized deduction.

The reason that the Koufoses could find no place on the federal forms to deduct the interest paid to the Mortgage Lenders before arriving at federal adjusted gross income is because interest paid on a mortgage acquired to develop rental property is not deductible under § 62(a)(4) after the property is sold.

### CONCLUSION

Both the plain language of § 62(a)(4) and the structure of the federal tax forms lead to the conclusion that once rental property is sold, any interest paid on a mortgage acquired to develop that property is not "attributable to property held for the production of rents and royalties." Because the Koufoses were not entitled to deduct interest paid to the Mortgage Lenders before arriving at their federal adjusted gross income, they were not entitled to deduct it before arriving at their Indiana adjusted gross income. Accordingly, the Koufoses should have reported their gross, not their net, interest income at line 2 of the 1988 IT–40. Summary judgment is entered in favor of the Department.