**MILES, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

**No. 49T10–9405–TA–00155.**

Tax Court of Indiana.

Dec. 20, 1995.

---

Martha B. Wentworth and Joseph R. Impicciche, Hall, Render, Killian, Heath & Lyman, P.C., Indianapolis, for Petitioner.

Pamela Carter, Attorney General of Indiana and Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Miles, Inc.[1] (Miles) appeals the final determination of the Indiana Department of State Revenue (Department) imposing use tax on promotional materials and discount coupons.

### ISSUES

I.   Whether the Department released Miles from liability for the taxes at issue when it mailed to Miles three "Letters of Resolution."

---

**1.** Since the commencement of this appeal, Miles has become a part of the Bayer Corporation.

II. Whether use tax applies to promotional materials that Miles temporarily retains in its Indiana warehouses, but later ships to its sales representatives in other states.

III. Whether Miles' discount coupons are exempt from use tax under either the incorporation exemption in IND. CODE 6–2.5–5–6 or the resale exemption in IND.CODE 6–2.5–5–8.

## FACTS AND PROCEDURAL HISTORY

Miles, an Indiana corporation, manufactures health care products, including a popular non-prescription drug called Alka–Selzer. During tax years 1985, 1986, and 1987 (the years in issue), Miles purchased promotional materials [2], sales aids [3], and shelf spotters [4] (collectively, promotional materials), and stored them in its Indiana warehouses. Miles later shipped approximately 97 percent of these promotional materials to its sales representatives in other states.[5]

Miles also purchased bulk quantities of coupons for insertion into its Alka–Selzer products. Each coupon provided a discount on the holder's next purchase of Alka–Selzer. The outside of the package stated that the coupon was inside.

As a result of an audit completed on December 14, 1992, the Department issued proposed assessments and Demand Notices for Payment (original notices) for use tax on the promotional materials and the discount coupons. Miles protested these assessments at a Departmental hearing on August 31, 1993, claiming that use tax did not apply to either the promotional materials or the discount coupons. The Department denied Miles' protest in a Letter of Findings on March 29, 1994. Miles filed an original tax appeal with this court on May 18, 1994.

After litigation was filed, the parties and counsel began good faith negotiations to set-tle the case. Then, on November 16, 1994, the Department sent Miles three "Letters of Resolution." These Letters of Resolution, referencing the tax liabilities at issue, stated:

Dear Sir/Madam:

Your recent explanation and/or payment with respect to the above mentioned liability has been satisfactory. No further action is required on your part.

We appreciate your cooperation in promptly replying to the notice.

Indiana Department of State Revenue

*Petitioner's Second Affidavit of David Patton,* Exhibit B. Miles received these letters on November 18, 1994.

On the same day the Letters of Resolution were mailed, the Department sent Miles a new audit and new Demand Notices for Payment (adjusted notices) for use tax on the promotional materials and the discount coupons. Miles received the adjusted notices on November 21, 1994—three days after it received the Letters of Resolution. *Petitioner's Second Affidavit of David B. Patton,* ¶¶ 5–6. The assessed amounts in the adjusted notices were lower than the amounts in the original notices.

Miles filed a motion for summary judgment with this Court on January 9, 1995. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ Summary judgment will be granted only when no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. *Koufos v. Indiana Dep't of State Revenue* (1995), Ind.Tax, 646 N.E.2d 733, 735; Ind.Trial Rule 56. If no genuine issue of material fact exists, then summary judgment may be entered in favor of either the movant or the non-movant. *Id.*

---

2. "Promotional materials" include coupons for free samples, direct mail brochures, and literature for salespeople.

3. "Sales aids" include free-standing shelf units that hold a product and are printed with some promotional artwork.

4. "Shelf spotters" include printed signs that are placed near a product to bring attention to the product.

5. The remaining 3 percent of these materials are used by Miles' sales representatives in Indiana. Miles does not dispute that this portion of the materials is subject to Indiana use tax.

## DISCUSSION AND ANALYSIS

Miles alleges that the Letters of Resolution canceled the tax liabilities at issue, rendering its original tax appeal moot. Miles also alleges that, even if those tax liabilities are not canceled, it is entitled to summary judgment on the merits. The Department alleges that the Letters of Resolution did not cancel the tax liabilities at issue, and that it is entitled to summary judgment on the merits.

### I. Letters of Resolution

■ Miles argues that the Letters of Resolution canceled the proposed assessments and the original notices. Miles also asserts that the adjusted notices are time-barred because they were issued outside the three-year limitations period. *See* IND.CODE 6–8.1–5–2(a).[6] Miles concludes that its original tax appeal is now moot.

The Department maintains that the Letters of Resolution could not have canceled Miles' tax liability, because under IND. CODE 4–6–2–11 this cancellation requires the approval of the governor and the attorney-general. The Department also contends that because the adjusted notices merely reduced the amount of assessment in the original notices, they relate back to the date of the original notices. The Department concludes that the case is not moot.

■ A case becomes moot when it becomes unnecessary to decide the question presented. *In the Matter of Tina T.* (1991), Ind., 579 N.E.2d 48, 52. If the basis of a suit is an administrative order, and that administrative order is validly withdrawn, the case becomes moot and a court should dismiss it. *Indiana Bureau of Motor Vehicles v. Zimmerman* (1985), Ind., 476 N.E.2d 114, 118. In determining whether the instant case is moot, this Court must decide whether the Department had the authority to cancel or withdraw the proposed assessments and the original notices. Absent that authority, the Letters of Resolution did not release Miles' tax liability.[7]

■ I.C. 4–6–2–11 provides:

No claim in favor of the state shall be compromised without the approval of the governor and the attorney-general, and such officers are hereby empowered to make such compromise when, in their judgment, it is in the interest of the state so to do.

In interpreting this statute, the Court's foremost goal is to give effect to the true intent of the legislature. *See Caylor–Nickel Clinic v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 768, *aff'd* 587 N.E.2d 1311. Unless a contrary intent is apparent, the Court presumes that the legislature intended statutory words and phrases to have their plain, ordinary, and usual meaning. *See Mechanics Laundry & Supply, Inc. v. Indiana Dep't of State Revenue* (1995), Ind.Tax, 650 N.E.2d 1223, 1228.

■ The plain, ordinary, and usual meaning of "claim" is a "[r]ight to payment, whether or not such right is reduced to judgment." *Black's Law Dictionary* 224 (5th ed. 1979). The state acquires a right to the payment of tax revenue every time a taxable event occurs.[8] Accordingly, if "claim" is given its plain meaning, the governor and the attorney-general must approve every settlement of every state tax dispute.[9]

It is difficult to conclude, however, that the legislature intended for the governor and the attorney-general to micro-manage the administration of the tax laws. This would require them to review an overwhelming number of disputes. Therefore, it is apparent that the legislature did not intend for the word "claim" to have its plain, ordinary, and usual

---

6. I.C. 6–8.1–5–2(a) provides, in general, that the Department may not issue a proposed assessment more than 3 years after the return is filed, or the due date of the return, whichever is later.

7. Miles has not asserted estoppel.

8. If the taxpayer does not report the proper amount of tax due, the Department may issue a proposed assessment on the amount unpaid.

I.C. 6–8.1–5–1(a). If the taxpayer fails to pay the assessment, the assessed amount may be reduced to a judgment lien. I.C. 6–8.1–8–2.

9. By focusing on the effect of I.C. 4–2–6–11 on the tax collection process, the Court does not imply that I.C. 4–6–2–11 applies to the settlement of tax disputes only.

meaning. *See generally Indiana State Bd. of Health v. The Journal–Gazette Co.* (1993), Ind.App., 608 N.E.2d 989, 992, *aff'd* (1993), Ind., 619 N.E.2d 273 (a court cannot presume that the legislature intended for a statute to be interpreted in an illogical manner).

■■■ In determining the true intent behind I.C. 4–6–2–11, the Court notes that the legislature has clearly defined the roles of the Department and the attorney-general in the tax collection process. The Department has broad authority to administer certain tax laws. I.C. 6–8.1–3–1. However, once an original tax appeal is filed, the attorney-general has the authority to represent the state in the dispute. I.C. 4–6–1–6. It naturally follows that the attorney-general has the authority to reject or approve the settlement of a litigated tax dispute. Therefore, the true intent of the legislature must be that a "claim in favor of the state" accrues for tax purposes when an original tax appeal is filed. Accordingly, under I.C. 4–6–2–11, no litigated tax dispute may be settled without the approval of the governor and the attorney-general.[10]

In the instant case, the Department mailed the Letters of Resolution nearly six months *after* Miles filed its original tax appeal. By that time, the Department no longer had the authority to settle the dispute or cancel Miles' tax liability without the approval of the governor and the attorney-general. Since those officials did not sign or otherwise approve the Letters of Resolution, the letters canceled neither the proposed assessments nor the original notices.

■■■ Because the proposed assessments and the original notices were not canceled, the adjusted notices are not time-barred under I.C. 6–8.1–5–2. The adjusted notices merely reduced the amount of assessment in the original notices, and therefore relate back to the date of the original notices. *Hoosier Energy Rural Electric Coop. v. Indiana Dep't of State Revenue* (1991), Ind. Tax, 528 N.E.2d 867, 869, *aff'd*, Ind., 572 N.E.2d 481, 483 *cert. den.* 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277. Accordingly, the instant case is not moot. The Court must consider the merits of Miles' appeal.

## II. Promotional Materials

■■■ Indiana imposes use tax on "the *storage, use,* or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction ..." I.C. 6–2.5–3–2(a) (emphasis added). The parties dispute whether use tax applies to promotional materials that Miles temporarily retains in its Indiana warehouses, but later ships out of state. The dispute centers on the parties' competing interpretations of "storage" and "use."

Miles argues that its promotional materials are excepted from use tax under the definition of "storage." "Storage" is defined as "the keeping or retention of tangible personal property in Indiana for any purpose *except the subsequent use of that property solely outside Indiana.*" I.C. 6–2.5–3–1(b) (emphasis added).

The Department argues that the promotional materials are taxable under the definition of "use." "Use" is defined as "the exercise of any right or power of ownership over tangible personal property." I.C. 6–2.5–3–1(a). Specifically, the Department contends that "Miles is liable for use tax because its storage of the promotional items in, and withdrawal of them from, its Indiana warehouses constitute the exercise of a right or power of ownership over them." *Department's Response to Miles' Motion for Summary Judgment* at 12.[11]

---

**10.** The Commissioner of the Department has express statutory authority to settle a tax dispute with an amount in contention of $25,000 or less. IND.CODE 6–8.1–3–17. However, even if the dispute in the instant case involved less than $25,000 (which it does not), this statute would still not apply because it became effective in 1989, two years after the dispute arose.

**11.** It may be argued that the storage exception only applies when property is identified for ship-

ment out of Indiana prior to its storage. This interpretation, however, is too narrow. It conflicts with the rule of construction that tax *exceptions,* unlike tax *exemptions,* establish the outer boundary of taxable activity, and are construed broadly against the state. *See State ex rel. Drum Service Co. Of Fla. v. Kirk* (1970), Fla., 234 So.2d 358, 359; *see also Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 129–131, 77 N.E.2d 921, 926; *see also* 68 Am.Jur.2d *Sales*

Miles is correct. This Court has previously held that the storage exception limits and qualifies the meaning of "use." *USAir, Inc. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 623 N.E.2d 466, 470. If property is stored in Indiana for subsequent use outside Indiana, then the activities of storing, handling, and transporting the property cannot be taxed as "uses." *Id.* To hold otherwise would subsume "storage" within "use," and nullify the exception for subsequent use outside Indiana. *Id.*

The Court cannot presume the legislature intended to enact a nullity. *Id.* Therefore, the Court holds that the storage of the promotional items in, and the withdrawal of them from, Miles' Indiana warehouses for shipment out of state do not constitute taxable "uses," but rather fall under the storage exception in I.C. 6–2.5–3–1(b). Accordingly, the promotional materials at issue are not subject to use tax.

### III. Discount Coupons

Finally, Miles claims that its discount coupons are exempt from use tax under the incorporation exemption in I.C. 6–2.5–5–6, or in the alternative, under the resale exemption in I.C. 6–2.5–5–8. It is well-settled that tax exemptions are strictly construed against the taxpayer. *Indiana Bell Telephone Co. v. Indiana Dep't of Revenue* (1994), Ind.Tax, 627 N.E.2d 1386, 1387. Thus, Miles bears the burden of showing that the terms of these exemptions are met. *Id.*

### A. The Incorporation Exemption

The incorporation exemption provides:

Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for *incorporation as a material part* of other tangible personal property which the purchaser manufactures, assembles, refines, or processes for sale in his business.

I.C. 6–2.5–5–6 (emphasis added). Departmental regulation 45 I.A.C. 2.2–5–14(2) defines "material part" as a "material or integral part of the finished product."

Miles argues that the discount coupon is "incorporated as a material part" of the Alka–Selzer product because the coupon is inserted inside the package containing the Alka–Selzer tablets, and because the coupon impacts the customer's decision to purchase the product. The Department argues, however, that the coupons are not "incorporated as a material part" of the product, since they are neither chemically nor mechanically joined with the Alka–Selzer.

Statutory words and phrases are given their plain, ordinary, and usual meaning unless a contrary legislative intent is apparent. *Mechanics Laundry*, 650 N.E.2d at 1228. The plain, ordinary, and usual meaning of "material" is "[i]mportant; more or less necessary." *Black's Law Dictionary* 880 (5th ed. 1979). The rules of statutory construction also apply to the construction of a duly promulgated regulation. *Caylor–Nickel Clinic*, 569 N.E.2d at 771. Accordingly, the plain, ordinary, and usual meaning of "integral" is "essential to completeness; organically joined or linked." *Webster's Third New International Dictionary* 1173 (1983).

Alka–Selzer alleviates acid indigestion, heartburn, and other physical maladies. Each chemical or ingredient in the Alka–Selzer is essential to the product. It cannot be said, however, that the coupon is essential to the product. The coupon neither hinders nor enhances the Alka–Selzer's effectiveness. Indeed, the coupon has no impact on the physical effects of the Alka–Selzer. Rather, the coupon's only effect is to reduce the price of the customer's next purchase of an Alka–Selzer product. Since this is far removed from the task of alleviating physical maladies, the coupons are not a "material part" of the Alka–Selzer product, and do not qualify for the incorporation exemption in I.C. 6–2.5–5–6.

---

*and Use Tax* § 116. Moreover, this interpretation does little to further the purpose of the exception, which is to encourage businesses to locate their regional warehouses in Indiana. *See generally* Jerome R. Hellerstein, Walter Hellerstein, 2 *State Taxation* ¶ 16.06, 16–33 (1993).

### B. The Resale Exemption

■ Miles also claims it is entitled to the resale exemption, which provides in relevant part:

Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for *resale*, rental, or leasing in the ordinary course of his business without changing the form of the property.

I.C. 6–2.5–5–8 (emphasis added). Miles asserts that it purchases the discount coupons for "resale" to its Alka–Selzer customers. Miles explains: "[a]ll three elements of a sale are present: ... the customer chooses ... the Alka–Selzer product containing the coupon ... (*mutual assent*), and the customer receives *title* upon paying *consideration* at the checkout." *Petitioner's Post Hearing Brief* at 28.

■ The Court has previously explained that, in order for an item to be "resold," the customer must pay the taxpayer an itemized amount for that item. *Indiana Bell,* 627 N.E.2d at 1389. Moreover, separate bargaining must occur between the customer and the taxpayer for the exchange of that particular item. *USAir, Inc. v. Dep't of State Revenue* (1989), Ind.Tax, 542 N.E.2d 1033, 1035–36, *aff'd* (1991), Ind., 582 N.E.2d 777.

In today's case, Miles' customers do not pay an itemized amount for the discount coupon. No bargaining occurs between Miles and its customers as to the face value of the coupon or the products to which the coupon applies. In light of these facts, Miles does not "resell" the coupons to its customers within the meaning of the exemption. Therefore, Miles' discount coupons do not qualify for the resale exemption in I.C. 6–2.5–5–8.

### CONCLUSION

For the foregoing reasons, Miles' promotional materials are excepted from use tax by the definition of "storage" in I.C. 6–2.5–3–1(b). However, Miles' discount coupons qualify neither for the incorporation exemption in I.C. 6–2.5–5–6 nor for the resale exemption in I.C. 6–2.5–5–8.

Accordingly, the Petitioner's Motion for Summary Judgment is GRANTED in part and DENIED in part, while the Department's final determination of March 29, 1994 is AFFIRMED in part and REVERSED in part.