TANNINS OF INDIANAPOLIS,
LLC, Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–1303–SC–45.

Tax Court of Indiana.

March 31, 2014.

Robert A. Romack, Dunbar & Romack, Franklin, IN, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Michele C. Roberts, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

WENTWORTH, J.

This case asks whether Tannins of Indianapolis, LLC is entitled to the purchase for resale exemption on its 2009, 2010, and 2011 purchases of programmable cards that operate its wine sample dispensing equipment. The Court finds that Tannins' purchases of the cards are not exempt.

## FACTS AND PROCEDURAL HISTORY

Tannins (d/b/a Tastings) owns and operates a wine bar in downtown Indianapolis that sells a selection of foods and desserts in addition to selling wine by the glass, by the bottle, and in two-ounce samples. (Resp't Des'g Evid. Supp. Resp't Br.

("Resp't Evid."), Ex. 2 at 3; Trial Tr. at 7.) Tannins owns "Italian [E]nomatic technology," specialized equipment with 104 stations that dispense samples of any wine in the bar. (Trial Tr. at 7.) This dispensing equipment can be operated only by inserting a programmed card ("tasting card"). (Trial Tr. at 7–9.)

A customer who wants to purchase wine samples tells Tannins the dollar amount to load onto a tasting card. (Trial Tr. at 7–8.) Using a "computer head," Tannins loads money in the amount desired by the customer onto the tasting card and programs it to operate Tannins' dispensing equipment. (Trial Tr. at 8, 13.) Tannins then charges the customer the amount loaded onto the card plus 9% tax.[1] (Trial Tr. at 8.)

A customer obtains a wine sample by inserting the tasting card into Tannins' dispensing equipment, which debits the cost of the wine sample from the amount on the tasting card and dispenses the two-ounce sample. (Jt. Stip. Facts ¶ 7.) Customers with money left on their tasting card can receive a refund by giving Tannins the card to put into its card reader and determine the dollar amount remaining on the card. (Trial Tr. at 14–15.) Tannins then refunds that amount including tax. (Trial Tr. at 15.)

On October 9, 2012, the Department completed an audit of Tannins for 2009, 2010, and 2011. (Resp't Evid., Ex. 2 at 1.) On November 13, 2012, the Department issued proposed assessments of use tax for each of the years plus interest. (Resp't Evid., Ex. 3.)

Tannins filed a written protest with the Department, claiming its purchases of the tasting cards were exempt from taxation.

(Pet'r Des'g Evid. ("Pet'r Evid."), Ex. 8.) After conducting a hearing, the Department issued the Letter of Findings on February 26, 2013, upholding the proposed assessments. (Pet'r Evid., Ex. 6.)

Tannins filed this original tax appeal on March 22, 2013. The Court held a trial and heard oral argument on January 10, 2014. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The Court reviews the Department's final determinations *de novo. See* IND.CODE § 6–8.1–5–1(i) (2014). Accordingly, the Court is bound by neither the evidence submitted nor the issues raised at the administrative level. *Lacey v. Indiana Dep't of State Revenue,* 948 N.E.2d 878, 879 (Ind. Tax Ct.2011). When a taxpayer claims an exemption, as here, the taxpayer bears the burden of proof, and the Court strictly construes any ambiguities in favor of taxation. *See Indiana Bell Tel. Co. v. Indiana Dep't of State Revenue,* 627 N.E.2d 1386, 1387–88 (Ind. Tax Ct.1994).

## LAW

■ Indiana imposes both a sales tax and a use tax. Sales tax is imposed on retail transactions made in Indiana. *See* IND.CODE § 6–2.5–2–1(a) (2009). When sales tax has not been paid on a retail transaction, a complementary use tax is imposed on tangible personal property acquired in a retail transaction that is stored, used, or consumed in Indiana, regardless of where the retail transaction occurred or where the retail merchant was located. IND.CODE § 6–2.5–3–2(a) (2009); *Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue,* 865 N.E.2d 725, 727 n. 4 (Ind. Tax Ct.2007) (explaining that the use tax is

---

1. During the years at issue, Indiana imposed at 7% sales tax and Marion County imposed a 2% food and beverage tax. *See* IND.CODE § 6– 2.5–2–2 (2009) (amended 2010); IND.CODE §§ 6–9–12–2 to –5 (2009); http://www.in.gov/ dor/4039.htm (last visited March 27, 2014).

complementary to the sales tax because it is designed to reach out-of-state purchases of tangible personal property that are subsequently used in Indiana), *review denied.*

Indiana's Legislature has specifically exempted certain retail transactions, however, from the imposition of sales and use tax. For example, the purchase for resale exemption at issue here states that "[t]ransactions involving tangible personal property . . . are exempt . . . if the person acquiring the property acquires it for resale . . . in the ordinary course of the person's business without changing the form of the property." IND.CODE § 6–2.5–5–8(b) (2009). *See also* IND.CODE § 6–2.5–3–4(a)(2) (2009) (applying sales tax exemptions to use tax).

## ANALYSIS

■ Tannins claims that its purchases of tasting cards are exempt from sales and use tax under Indiana Code § 6–2.5–5–8(b) because it resold them to its customers.[2] (Pet'r Mem. Law Supp. Contentions at 6, 9.) As evidence, Tannins' CEO testified that Tannins accounted for the cost of the cards as inventory in its cost of goods sold and that it included the cost of the cards in the sale price of the wine samples. (Trial Tr. at 8–9; Pet'r Evid., Ex. 5 ¶ 5.)

This Court has consistently explained that for a resale to exist, the buyer and seller must separately bargain for the property in exchange for the payment of consideration. *See Brambles Indus., Inc. v. Indiana Dep't of State Revenue,* 892

N.E.2d 1287, 1290 (Ind. Tax Ct.2008); *Miles, Inc. v. Indiana Dep't of State Revenue,* 659 N.E.2d 1158, 1165 (Ind. Tax Ct.1995); *Greensburg Motel Assocs. v. Indiana Dep't of State Revenue,* 629 N.E.2d 1302, 1305–06 (Ind. Tax Ct.1994); *Indiana Bell,* 627 N.E.2d at 1389; *USAir, Inc. v. Indiana Dep't of State Revenue,* 542 N.E.2d 1033, 1035–36 (Ind. Tax Ct.1989), *aff'd,* 582 N.E.2d 777 (Ind.1991). Furthermore, this Court has long recognized that invoices, receipts, or other indicia that distinctly identify the items for which consideration was paid are persuasive evidence that a buyer and seller actually bargained for the exchange of those items. *See Brambles,* 892 N.E.2d at 1290; *Miles,* 659 N.E.2d at 1165; *Indiana Bell,* 627 N.E.2d at 1389; *USAir,* 542 N.E.2d at 1035–36. Here, Tannins did not provide its customers with receipts that separately identified a charge for the tasting cards. (*See* Trial Tr. at 28, 62.) Moreover, Tannins did not provide other evidence to show its customers separately bargained for the tasting cards in exchange for their payment.

Tannins asserts, however, that it is not required to show that its tasting cards were separately bargained for by its customers. (Trial Tr. at 17–19.) More specifically, Tannins claims that the purchase for resale exemption cases cited above do not apply here because they are factually distinct: the purchase (*i.e.,* delivery) of the main object of the payment in each of those cases took place *before* the delivery

---

**2.** Tannins also claims that its purchases are exempt because it transferred the tasting cards without changing their form. (Pet'r Mem. Law Supp. Contentions at 6.) (*See also* Trial Tr. at 13 (claiming that "the structure of the card[s] doesn't change").) The Department does not dispute this claim, even though Tannins loads the tasting cards with customers' money and programs them to operate its dispensing equipment. *Cf. Dep't of Treasury*

*v. Fairmount Glass Works, Inc.,* 113 Ind.App. 684, 49 N.E.2d 1, 5 (1943) (finding that a brewer resold bottles in the same form as when they were acquired even though it filled them with beer and attached bottle caps and labels because the ultimate purchaser, after disposing of the beer, had exactly what the brewer acquired—an empty bottle—its shape, structure, and identity as a bottle and its principal use unchanged).

of the secondary property at issue, while the delivery of the main object here, the wine samples, took place *after* the delivery of the tasting cards. (*See* Pet'r Reply Br. at 2–3 (*citing USAir*, 542 N.E.2d at 1034 (delivery of airline transportation preceded delivery of on-flight meals/snacks)); *Indiana Bell*, 627 N.E.2d 1386 (delivery of telephone service preceded delivery of telephone directories); *Greensburg Motel*, 629 N.E.2d at 1304 (delivery of room preceded delivery of consumables); *Miles*, 659 N.E.2d at 1165 (delivery of Alka–Seltzer preceded delivery of discount coupon); *Brambles*, 892 N.E.2d at 1290 (delivery of products preceded delivery of pallets)).[3]

This distinction lacks legal significance. The separately bargained-for requirement demonstrates that the exact item was actually resold, not transferred by the retailer for another purpose (*e.g.*, as a means to access wine samples). Indeed, the separately bargained-for requirement is the standard against which a resale has been tested for decades, and Tannins did not present any legal authority or any rationale to persuade the Court that the timing of delivery changes this standard's usefulness.

Tannins has also argued that it is not required under the purchase for resale exemption to show that the tasting cards were separately bargained for by its customers because the decision in *Indiana Department of State Revenue v. AOL, LLC*, 963 N.E.2d 498 (Ind.2012) requires only a showing that a retail transaction has taken place. (*See* Trial Tr. at 20–35.) Tannins' reliance on *AOL* for this proposition, however, is misplaced. The issue in *AOL* was whether the transaction was subject to the imposition of use tax in the first

instance (*i.e.*, did a taxable retail transaction occur?). *See Indiana Dep't of State Revenue v. AOL, LLC*, 963 N.E.2d 498, 501, 504 (Ind.2012). The issue here, on the other hand, is whether tasting cards obtained in an otherwise taxable retail transaction are exempt because they were resold. Moreover, the imposition statute construed in *AOL* and the purchase for resale exemption statute contain different requirements. *Compare* IND.CODE § 6–2.5–4–1(c)(1) (2009) (stating that when determining what constitutes selling at retail, it is immaterial whether property was transferred in the same form as when it was acquired) *with* I.C. § 6–2.5–5–8(b) (stating that when determining whether the purchase for resale exemption applies, property must be resold without changing its form). Therefore, the holding in *AOL* does nothing to remove, supplant, or diminish the value of the separately bargained-for test for purposes of the purchase for resale exemption in determining whether a resale has occurred. Accordingly, the Court finds the tasting cards were not resold within the meaning of Indiana Code § 6–2.5–5–8(b).

## CONCLUSION

For the above-stated reasons, the Court finds that Tannins' purchases of tasting cards are not exempt from use tax under Indiana Code § 6–2.5–5–8(b), the purchase for resale exemption. The Court therefore AFFIRMS the Department's final determination.

---

**3.** Tannins is incorrect regarding the timing of delivery in *Miles* and *Brambles*. *See Miles*, 659 N.E.2d at 1165 (showing simultaneous delivery of the Alka–Seltzer and the coupon in the package); *Brambles*, 892 N.E.2d at 1290 (showing simultaneous delivery of the pallets and the products attached).