282 N.E.2d 336 (1972)
INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant below),
v.
FRANK PURCELL WALNUT LUMBER CO., Inc., Appellee (Plaintiff below).
No. 271A31.
Court of Appeals of Indiana, Second District.
May 11, 1972.
As Corrected on Denial of Rehearing June 13, 1972.
*338 Theodore L. Sendak, Atty. Gen., Larry J. McKinney, Mark Peden, Deputy Attys. Gen., for appellant.
William H. Krieg, Robert E. Johnson, Jerry Williams, Indianapolis (Krieg, DeVault, Alexander & Capehart, Indianapolis, of counsel), for appellee.
BUCHANAN, Judge.
STATEMENT OF THE CASE AND FACTS  This is an appeal from a summary judgment entered by the trial court against the (defendant-appellant) Indiana Department of State Revenue (Department) in an action instituted by (plaintiff-appellee) Frank Purcell Walnut Lumber Co., Inc. (Purcell), for a refund of gross income taxes paid under protest to the Department for fiscal years ending November 30, 1965, November 30, 1966, and November 30, 1967, arising from interstate sales of logs and timber.
Purcell is an Indiana corporation (incorporated in 1959) authorized to do business in Kansas City, Kansas. Purcell's sole shareholder is the Amos-Thompson Corporation (Amos), of Edinburg, Indiana, also formed under Indiana law.
From November 30, 1965 through the fiscal year ending November 30, 1967, Purcell had five directors, two being also directors of Amos and one being an employee of Amos. These three directors were Indiana residents; the remaining two were not. During these same fiscal years, Purcell had four officers; three of these officers were also officers of Amos, and the fourth was an employee of Amos. All four officers resided in Indiana. The officers and directors of Purcell served without compensation.
Purcell was formed by its Indiana attorneys for the sole purpose of acquiring and continuing the business of an active corporation then located in Kansas City, Kansas. After qualifying to do business in Kansas, Purcell purchased the assets of the Kansas corporation. As required by statute, Purcell maintained a resident agent in Edinburg, Indiana, who was also one of its officers and directors.
Purcell maintained its plant and office and conducted its business in Kansas City, Kansas from the same location used by Purcell's predecessor.
During the three years in question, Purcell was in the business of buying logs, trimming and processing, and selling logs and lumber. Logs were obtained by Purcell from Kansas, Missouri, Iowa, Nebraska, and Arkansas. Subsequent trimming and processing of the logs was completed at its plant in Kansas City. Purchasers of logs or lumber sent orders to the Kansas City office, where they were accepted or rejected. If the order was accepted, the logs or lumber would be shipped by rail to the buyer from the Kansas City office and payment made to the same place.
During these fiscal years most of Purcell's income was derived from sales to customers outside the State of Indiana, although logs and lumber were also sold to its sole shareholder, Amos. For the fiscal year ending November 30, 1965, 27% of Purcell's gross income was derived from sales to Amos. For the fiscal year ending November 30, 1966, 34% of Purcell's gross income was derived from sales to Amos, and for the fiscal year ending November 30, 1967, the percentage was 17%.
The income derived by Purcell from Amos was reported to the State of Indiana. The income tax liability on this income was computed under the Adjusted Gross Income Tax Act of 1963.
On January 20, 1969, the Department assessed a gross income tax deficiency against Purcell for the three fiscal years in question. The deficiency was imposed by the Department because it determined that *339 this income was subject to taxation under the Gross Income Tax Act of 1933. Following Purcell's protest, a hearing was held. The Department denied the protest and ordered the deficiency ($4,399.00) paid along with a penalty ($439.90) and interest ($561.56), in the total sum of $5,400.46. Payment was made on May 29, 1969, and a petition for refund was filed June 30, 1969. The petition was denied by the Department and on September 9, 1969 this action for a refund was filed in the Johnson Circuit Court. Both parties subsequently moved for summary judgment and filed supporting affidavits. Following a hearing and oral argument, the Johnson Circuit Court entered summary judgment for Purcell, awarding the full amount of the deficiency, penalty, and interest paid, along with interest on that amount plus costs.
Purcell's income resulting from sales to customers outside the State of Indiana is not subject to taxation under either Act, was not considered by the Department when it computed the deficiency against Purcell, and is not in dispute in this action.
ISSUES  We dispose first of a threshold question raised by Purcell challenging the adequacy of the brief and Motion to Correct Errors. In our opinion the Department adequately complied with Rule TR. 59, IC 1971, 34-5-1-1, Rule 59 and Rule AP. 8.3 of the Indiana Rules of Procedure.
Although the Department's Motion to Correct Errors is couched in general language, attached to it was a supporting Memorandum containing argument which specifically indicated the Department's position. Even though the Motion to Correct Errors was generally phrased it essentially stated the grounds for the correction of errors required by Rule TR. 59(A) (4) and (8), i.e., that the decision of the Court was not supported by sufficient evidence and that it was contrary to law. Reading the Motion to Correct Errors which is included in the Department's brief with the supporting Memorandum it is apparent that the Department has substantially complied with Rule TR. 59.
While the Department's brief is just that, brief, it affords us sufficient information to determine the claimed error. Willsey v. Hartman, (Ind. App. 1971) 269 N.E.2d 172, committed us to a liberal view of Rule AP. 8.3:
"It is true that the Motion for a New Trial is not fully set out verbatim in any one spot in the Brief, but the substance thereof is adequately presented by reading the Brief as a whole and there is no need to search the record to find any error, the primary reason for finding any brief insufficient."
The Department's brief being deemed sufficient and neither party contending that there exists an issue as to any material fact we are left with only a question of law to be decided.
Two issues are thus presented for review:
ISSUE ONE. Was the income received by Purcell from Amos exempt from the Gross Income Tax Act, IC 1971 6-2-1-1, Ind. Ann. Stat. § 64-2601(m) (Burns 1970) (hereafter referred to as § 1(m))?
ISSUE TWO. Does the application of the Gross Income Tax Act to the income received by Purcell from Amos violate the commerce clause (Art. 1, Sec. 8) of the United States Constitution?
As to ISSUE ONE, the Department maintains that § 1 (m) merely recognizes that any Indiana corporation doing business at a situs outside the state shall not pay taxes upon gross income received from sources outside the state. Since Purcell's income was received from a source within the state (Amos), the Department contends that the § 1(m) exclusion does not apply.
*340 Purcell maintains that § 1(m) provides a specific statutory exemption for the income which Purcell derived from its sales to Amos.
As to ISSUE TWO, the Department argues that there is simply no issue in this case regarding multiple taxation or burdens on interstate commerce. Thus, the commerce clause is not applicable to the intrastate sale between Purcell and Amos.
Purcell disagrees by contending that the commerce clause of the federal Constitution prohibits the imposition of a gross income tax on income derived from sales in interstate commerce. Since the income in question was derived from sales between Purcell in Kansas and Amos in Indiana, Purcell maintains that interstate commerce was involved.
DECISION  ISSUE ONE. It is our opinion that the income derived by Purcell from Amos does not qualify for the § 1(m) exemption from gross income tax.
In pertinent part, § 1(m) provides:
"That with respect to individuals resident in Indiana and corporations incorporated under the laws of Indiana authorized to do and doing business in any other state and/or foreign country, the term `gross income' shall not include gross receipts received from sources outside the state of Indiana in cases where such gross receipts are received from a trade or business situated and regularly carried on at a legal situs outside the state of Indiana, or from activities incident thereto * * *." (Emphasis supplied.)
The gist of § 1(m) is that the gross income of an Indiana corporation doing business at a situs outside the State of Indiana "shall not include gross receipts received from sources outside the state of Indiana * * *." To qualify for exemption the corporation must be incorporated under the laws of Indiana, doing business in another state, and it must derive income from sources also outside the State of Indiana.
It is uncontroverted that Purcell is an Indiana corporation maintaining a resident agent in Edinburg, Indiana, as required by Ind. Ann. Stat. § 25-204 (Burns 1970), IC 1971, 23-1-2-5. Similarly, it is not disputed that during the fiscal years under review Purcell was, and is now, doing business at a legal situs outside the State of Indiana, i.e., Kansas City, Kansas. The critical term to interpret, then, is the word "sources," as used in the phrase "receipts received from sources outside the state of Indiana * * *." The Department maintains that the word "sources" refers to the situs of customers of the Indiana corporation. Purcell, on the other hand, asserts that the word "sources" refers to the situs at which the seller's business is being conducted.
Our interpretation of Section 1(m) is that gross income of an Indiana corporation which conducts its business outside this state does not include income received from a customer located outside of Indiana. If the term "sources" is construed to mean the situs at which the seller's business is being conducted the statute must be distorted to interpret "sources" to mean the situs at which the seller's business is being conducted. Such an interpretation ignores the first three lines of § 1(m), which create a category of taxpayers consisting of Indiana corporations "authorized to do and doing business in any other state." The remainder of that sentence goes on to describe their exempt income as being gross receipts received from a trade or business situated at a situs outside Indiana. Attributing to these words their plain and ordinary meaning we must conclude that "sources" means customers or buyers.
To countenance Purcell's interpretation is to allow every Indiana corporation having its main office or plant outside the state of Indiana an exemption from Indiana gross income tax on the theory that its income was derived from a source outside *341 Indiana, even though goods were sold to a customer residing within our state. We must assume that the legislature intended to adopt a meaningful statute and not an absurdity. In re Adoption of Jackson v. Barnhill (Ind. 1972) 277 N.E.2d 162.
Although the details of the sale from Purcell to Amos were concluded in the state of Kansas, the sale was made by an Indiana corporation to an Indiana corporation with delivery in Indiana.
Section 1(m) requires that the source of income be from outside the state to be exempt from tax. Since the income in question was not received by Purcell from a source outside the State of Indiana, the § 1(m) exclusion from gross income does not apply.
ISSUE TWO. It is our opinion that the imposition of the gross income tax upon the income received by Purcell from Amos does not violate the commerce clause of the United States Constitution.[1]
A state has the power to impose taxes upon instrumentalities of interstate commerce only when the tax, in practical operation, has a relation to opportunities, benefits, or protection inferred or afforded by the taxing state. Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment, (1954) 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967. Due process requires that some definite link or minimum connection exist between a state and the entity which it seeks to tax. General Motors Corp. v. Washington, (1964) 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430; Miller Bros. Co. v. Maryland, (1954) 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744; Mueller Brass Co. v. Gross Income Tax Div., (Ind. 1971) 265 N.E.2d 704.
Purcell is an Indiana corporation doing business at a situs in another state. It maintains a resident agent, as required by law, in Edinburg, Indiana. It is a wholly owned subsidiary of an Indiana corporation with which it has interlocking officers and directors and to whom it sells a product which is delivered in Indiana.
That Purcell is a legal resident of Indiana is beyond denial. It is well settled that the legal existence and the citizenship of a corporation can only be in the state where it was created, notwithstanding that the corporation may lawfully do business in other states. International Milling Co. v. Columbia Transp. Co. (1934) 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396; Shaw v. Quincy Mining Co., (1892) 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768; 8 Fletcher, Cyclopedia of Corporations 423 § 4025 (Rev.Vol. 1966). By consent of the incorporating jurisdiction, the corporation may transact business there the same as a natural person. St. Louis v. Wiggins Ferry Co., (1870) 11 Wall. 423, 20 L.Ed. 192. As a resident of the state under whose laws it is formed a corporation is governed by the law of the jurisdiction where it was created and is subject to its power of taxation. 8 Fletcher, Cyclopedia of Corporations 426 § 4025 (Rev.Vol. 1966).
Justice Hunter said in Mueller Brass Co. v. Gross Income Tax Division, (Ind. 1971) 265 N.E.2d 704:
"We look to the totality of appellant's activity in the southern sector and not to any isolated portions of it which, if considered alone, might lead to a cursory conclusion that the acts are interstate in character. It is the

`* * * bundle of corporate activity * * *' General Motors Corp. v. Washington, supra, 377 U.S. at 447, 84 S.Ct. 1564, 12 L.Ed.2d at 439.
which we examine." (Emphasis supplied.)
*342 Purcell is sufficiently wrapped up in this "bundle of corporate activity" to have an adequate nexus with the state of Indiana to fulfill the requirements of due process. Mueller Brass Co. v. Gross Income Tax Division, supra. Although mere entry into a state does not deprive a corporation of the right to continue to do an interstate business with tax immunity, it does not follow that the corporation can channel its operation through local connections taking advantage of its domesticity, while still maintaining the same degree of tax immunity. General Motors Corp. v. Washington, (1964) 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430.
Purcell relies on the authority of Dept. of Treasury of Indiana v. International Harvester Co., (1943) 221 Ind. 416, 47 N.E.2d 150 (aff'd in International Harvester Co. v. Dept. of Treasury of Indiana, (1943) 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313) to demonstrate lack of nexus. In Harvester, the Indiana Supreme Court refused to apply the gross income tax to sales by taxpayer's branches located outside the state of Indiana to customers located within the state of Indiana. Despite the similarity of the transaction in Harvester to the case before us, Harvester can be distinguished in that the taxpayer in Harvester was not an Indiana corporation (citizen) although it was authorized to do business in Indiana. Moreover, the court in Harvester was applying the provisions of a different statute, i.e., Ind. Ann. Stat. § 64-2602 (Burns 1943) IC 1971, 6-2-1-2, which related to application of Indiana gross income tax to the income of non residents, thereby creating the possibility of multiple taxation which is the important distinguishing feature of Harvester. The purpose of the Commerce Clause is to assure the unrestricted flow of commerce throughout the several states. Since the imposition of a tax by several states on the same transaction results in a multiple burden on interstate commerce and aids in establishing individual trade barriers, the privilege of levying a tax has been restricted to the state having a nexus with the transaction and the taxpayer. It was the possibility of a multiple burden in Harvester which was the basis for denying Indiana the right to impose a gross income tax.
Dispositive of the nexus question is Department of Treasury of the State of Indiana v. Allied Mills, Inc., (1942) 220 Ind. 340, 42 N.E.2d 34 (aff'd by the United States Supreme Court in 318 U.S. 740, 63 S.Ct. 666, 87 L.Ed. 1120). In Allied, the taxpayer, like Purcell, was an Indiana corporation authorized to do and doing business in another state (Illinois). The disputed gross income in Allied was derived from sales to resident customers in Indiana, to whom deliveries were made from the taxpayer's facilities in Illinois pursuant to orders taken in Indiana and accepted in Illinois. In upholding the application of the gross income tax to the income derived from the sales in the Allied case, our Supreme Court said:
"The trend of the recent decisions appear to support the view that under the circumstances of the case before us the imposition of a tax of this character by the buyer's state will be sustained. Wiloil Corp. v. Pennsylvania, 1935, 294 U.S. 169, 55 S.Ct. 358, 79 L.Ed. 838, rehearing denied 294 U.S. 733, 55 S.Ct. 543, 79 L.Ed. 1262. Henneford v. Silas Mason Co., 1937, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814. Sears, Roebuck & Co. v. McGoldrick, 1938, 279 N.Y. 184, 18 N.E.2d 25; Id., 280 N.Y. 570, 20 N.E.2d 18."
We recognize that the taxpayer in Allied did have operating facilities in Indiana in addition to its facilities in Illinois, and that Purcell did not have operating facilities in Indiana. However, Allied's Indiana facilities were not involved in the sales in question. We also recognize that the orders received by Allied were solicited in Indiana while Purcell's orders were not solicited in Indiana. These differences are not so significant that we must reject Allied as ruling precedent.
*343 The conclusion is inescapable that the completion of this transaction between two creatures of Indiana law by delivery of Kansas goods in Indiana is sufficient nexus to meet the requirements of due process. Such a nexus however, is not material in determining the validity of a specific tax under the commerce clause. Michigan-Wisconsin Pipe Line Co. v. Calvert, (1954) 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583. So we must now determine whether the imposition of the gross income tax to the transaction in question is in violation of the federal interstate commerce clause.
Interstate commerce and its instrumentalities are not totally immune from state taxation, absent action by Congress. Interstate business must pay its fair share of the state tax burden. Michigan-Wisconsin Pipe Line Co. v. Calvert, supra. It has been held that: "... [i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business." General Motors Corporation v. Washington, supra. See also: Spector Motor Service, Inc. v. O'Connor, (1964) 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573. But, a state may not "... impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business." Northwestern States Portland Cement Co. v. Minnesota, (1959) 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421. While a state may impose a tax burden that is reasonable in light of the taxpayers commercial contact with the state, a tax system which creates the possibility of multiple taxation is forbidden. Northwestern States Portland Cement Co. v. Minnesota, supra: Michigan-Wisconsin Pipe Line Co. v. Calvert, supra.
In determining whether a state tax discriminates against commerce, the issue is whether the local activity which is made the subject of the tax is such an integral part of the interstate flow of commerce that it cannot realistically be separated from it. Dunbar-Stanley Studios, Inc. v. Alabama, (1969) 393 U.S. 537, 89 S.Ct. 757, 21 L.Ed.2d 759. Differently stated, a reasonable tax burden is constitutionally proper if it is fairly apportioned to local activities within the taxing state. General Motors Corp. v. Washington, supra.
The only portion of Purcell's income which the Department seeks to tax here is that which is derived from sales to an Indiana buyer. Sales made by Purcell to nonresidents of Indiana are not in dispute. So the imposition of the gross income tax upon the present transaction in no way discriminates against interstate commerce as the tax is fairly apportioned to local activities, i.e., sales by an Indiana corporation to an Indiana corporation. No attempt is made to apply the gross income tax to Purcell's income from sources outside the state of Indiana.
Furthermore, there exists no possibility of multiple taxation because the income arises solely from sales in Indiana. Nor is the imposition of the tax evil in that it creates a commercial advantage to local business in the nature of a tariff. The application of the gross income tax to this type of income does not come within the ambit of the decision in J.D. Adams Mfg. Co. v. Storen, (1938) 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 where the United States Supreme Court struck down the application of the Indiana gross income tax because, as applied, it indiscriminately taxed total gross income without apportionment to the interstate and intrastate activity of the taxpayer.
Purcell's contention that when a product crosses a state line it is ipso facto transformed into untouchable interstate commerce and any income from the sale thereof is exempt from the gross income tax, is too simplistic. Purcell would have us exempt all income regardless of its apportionment or connection with local activities, citing as authority Gross Income Tax Div. v. L.S. Ayres & Co., (1954) 233 Ind. *344 194, 118 N.E.2d 480. At best, the transaction between these two Indiana corporations was only dampened by the stream of interstate commerce. While the sale in L.S. Ayres, supra, was between two Indiana residents, the benefit derived from that sale was intended for a third party located out of state and it was on that basis alone the Indiana Supreme Court held that the transactions were not taxable under the Gross Income Tax Act. A situation dissimilar to the one before us.
As we can see no possibility of multiple taxation and there is no showing that the application of the gross income tax discriminates against interstate commerce in favor of local activities, we hold that the application of the gross income tax to the income derived by Purcell from Amos is only a reasonable burden on interstate commerce, fairly apportioned to local activities within Indiana.
The judgment of the trial court is therefore reversed and remanded for further proceedings not inconsistent with this opinion.
LOWDERMILK, J. (by designation), and SULLIVAN, J., concur.
WHITE, P.J., not participating.
NOTES
[1] Art. I, § 8(3) says that Congress shall have power: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."