**JEFFERSON SMURFIT CORPORATION, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9504–TA–00031.

Tax Court of Indiana.

June 20, 1997.

B. Keith Shake, Henderson, Daily, Withrow & DeVoe, Indianapolis, for petitioner.

Jeffrey A. Modisett, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

Jefferson Smurfit Corporation (Smurfit) filed a motion for summary judgment seeking a refund of corporate gross income taxes paid to the Indiana Department of Revenue for the years 1984 through 1986. The Department does not dispute the lack of any genuine issue of fact, only Smurfit's legal conclusions. The Department maintains that a plain reading of the IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) (West 1989) excludes part of Smurfit's activities from "wholesale sales" treatment, thereby denying them a lower rate of gross income tax.

### FACTS & PROCEDURAL HISTORY

Smurfit provides a custom packaging service for manufacturers and other customers. In some cases Smurfit provides the packaging materials at a cost to itself, and in others the materials are provided by the customers. The product to be packaged is provided by the manufacturer or customer, whether or not the packaging material is supplied by Smurfit.

The majority of Smurfit's receipts are derived from the packaging of various products that are included with other products sold by the manufacturers (e.g., the toy prize in a box of cereal). Smurfit also packages goods to be sold by their customers directly (e.g., packages of trading cards and chewing gum). Smurfit's other sales consist of the packaging of products that may either be distributed by manufacturers in sales promotions or resold as "trial size" products (e.g., small samples of shampoo or detergent). The Department treated the first two types of sales as industrial processing, allowing them a lower "wholesale sales" rate of income tax. The third was subjected to a higher rate of tax— but only in those instances when the Department found that there was no subsequent sale of the products by Smurfit's customers.

Smurfit appealed this treatment to the Department, which found against Smurfit in a Letter of Findings on March 22, 1992. The Department then issued notices demanding payment of tax and interest for 1984 through 1986 on September 10 and 11, 1992. Smurfit paid the amounts claimed on September 18, 1992 and filed Claims for Refund with the Department on December 27, 1994. The Department issued its final determination denying the refund on January 9, 1995. Smurfit then filed an original tax appeal with this Court on April 7, 1995. This Court reviews the Department's final determinations *de novo* and is bound neither by the evidence nor the issues raised at the administrative level. *ANR Pipeline Co. v. Department of State Revenue*, 672 N.E.2d 91, 93 (Ind. Tax Ct.1996).

On January 11, 1996 the Department filed a motion for summary judgment. This was followed by Smurfit's own summary judgment motion on January 12. Summary judgment is appropriate only when no genuine issues of material fact exist and a party is entitled to judgment as a matter of law. IND.TRIAL RULE 56(C). Cross motions for summary judgment do not alter this standard. *Roehl Transport, Inc. v. Department of State Revenue*, 653 N.E.2d 539, 541 (Ind. Tax Ct.1995). A hearing on the cross motions was held before the Court on March 15, 1996.

### DISCUSSION AND ANALYSIS

Crucial to the Court's holding in this case is the language used in the statutes in question. IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) was amended and its form changed in 1985. The nature of these changes are such that the Court finds it necessary to treat the taxes for 1984 (before the amendments) separately from 1985 and 1986. The current law was in effect for these latter years.

#### 1984

For all three years at issue in this case, the Gross Income Tax is imposed under IND. CODE ANN. § 6–2.1–2 (West 1989). The tax is levied at one of two rates: 0.3% or 1.2%. IND.CODE ANN. § 6–2.1–2–3 (West 1989). The nature of the transaction from which

income is received determines which of the two rates is to be applied. IND.CODE ANN. § 6–2.1–2–2 (West 1989). In the case at bar, the rate determination depends on whether Smurfit's activities fall under "wholesale sales" as defined by IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) (West 1989), or constitute the provision of services defined by IND.CODE ANN. § 6–2.1–2–5(9) (West 1989). For 1984, "wholesale sales" was defined as follows:

(c)(1) "Wholesale sales" means any sale described in this subsection in which the purchaser is not a division, subdivision, agency, instrumentality, unit, or department of government:

(A) sales of tangible personal property (except capital assets or depreciable assets of the seller) for resale in the form in which it was purchased.

(B) sales of tangible personal property which is to be directly consumed in direct production by a purchaser in the business of producing tangible personal property by manufacturing, processing, refining, repairing, mining, agriculture, or horticulture.

(C) sales of tangible personal property to be incorporated as a material or integral part of tangible property produced by a purchaser in the business of manufacturing, assembling, constructing, refining, or processing.

(D) receipts from industrial processing or *servicing, including the enameling and plating of tangible personal property* which is owned and is to be sold by the person for whom the servicing or processing is done, either as a complete article or incorporated as a material, or an integral or component part of tangible personal property produced for sale by such person in the business of manufacturing, assembling, constructing, refining, or processing.

(E) sales of drugs, medical and dental preparations, and other similar materials to be directly consumed in professional use by doctors, hospitals, embalmers, and tonsorial parlors.

(F) sales of tangible personal property to be directly consumed by the purchaser in the business of industrial cleaning.

(G) sales of tangible personal property to be directly consumed by the purchaser directly in the business of rendering public utility service.

IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) (West 1982) (emphasis added).

Smurfit argues that the reference to resale provided in (c)(1)(D) pertains only to "enameling and plating" and should not be applied to Smurfit's operations. They contend that the reference to resale applies only to a specific type of industrial processing. While the language is less than lucid, the Court is not convinced by Smurfit's limited interpretation. The idea that the language "produced for sale" modifies enameling and plating alone is not supported by the history of the statute. This tax was previously imposed under IND.CODE ANN. § 64–2603. Chapter 140, § 2, 1941 Ind. Acts 82. Originally it read:

receipts received from the business of industrial *processing, enameling, plating or servicing of any tangible personal property which is to be sold* by the person for whom such processing, enameling, plating or servicing is done, either as a complete article or incorporated as a material, or as an integral or component part of tangible property produced for sale by such person in the business of manufacturing, assembling, constructing, refining, or processing;

IND.CODE ANN. § 64–2603 (Burns 1943) (emphasis added). This subsection had been added in reaction to *Ingram–Richardson Mfg. Co. v. Department of Treasury*, 114 F.2d 889 (7th Cir.1940), *rev'd on other grounds* 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313 (1941), which had held that the activities of enamelers and platers were not within "wholesale sales." But a plain reading of this statute indicates that the legislature did not intend to limit the resale requirement to enameling and plating alone. Had this been their intention, they simply would have stated "enameling or plating" rather than "processing, enameling, plating or servicing." A 1955 amendment to this statute makes it clear that enameling and plating were merely specific types of servicing or processing that

were to be included. Chapter 260, § 1, 1955 Ind. Acts 89.

> Receipts received from the business of industrial processing or servicing *including but not limited to enameling and plating of any tangible personal property* which is owned by and which is to be sold by the person for whom such processing or servicing is done, either as a complete article or incorporated as material, or as an integral or component part of tangible personal property produced for sale by such person in the business of manufacturing, assembling, constructing, refining or processing;

IND.CODE ANN. § 6–2–1–3(a)(4) (Burns 1978) (emphasis added). The phrase "including but not limited to" clearly suggests that what follows is an example of industrial processing—an example that places no limits on what types of industrial processing or servicing are included. This interpretation is supported by the Department's regulations. If, as in this case, the language of a statute is ambiguous, it is appropriate to look to the pertinent regulation for help in clarifying the law. *Johnson County Farm Bureau Coop. Ass'n, Inc., v. Department of State Revenue,* 568 N.E.2d 578, 585–586 (Ind. Tax Ct.1991). The regulation covering this type of "wholesale sale" reads:

> Receipts from industrial servicing or processing of tangible personal property owned by another and which is to be sold by him as either a completed article or a material part thereof, or as an integral or component part of tangible personal property produced for sale by him as part of the business of manufacture, assembly, construction, refining or processing.

IND.ADMIN.CODE tit. 45, r. 1–1–86(4) (1992). The regulations were last updated in 1978. At trial, the Department indicated that they were "not aware" of the adoption of any new regulations interpreting this statute. Tr. at 31–32. In any event, the regulations cease being helpful for statutory interpretation after this amendment.

INDIANA CODE ANN. § 6–2–1–3(a)(4) was recodified into IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) in 1981. Pub.L. No. 77, § 1, 1981 Ind. Acts 102. A comma was inserted after "servicing" and "the" was inserted before "enameling," which supports Smurfit's notion that the remaining clauses beginning with "of tangible personal property ..." modify only "the enameling and plating," as follows:

> receipts from industrial processing or *servicing, including the enameling and plating of tangible personal property* which is owned and is to be sold by the person for whom the servicing or processing is done, either as a complete article or incorporated as a material, or an integral or component part of tangible personal property produced for sale by such person in the business of manufacturing, assembling, constructing, refining, or processing.

IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) (West 1982) (emphasis added). However, the 1981 recodification statute contains a saving clause that makes it clear that these changes were grammatical and not substantive. It states:

> This act is intended to be a codification and restatement of applicable or corresponding provisions of the laws repealed by this act. If this act repeals and reenacts a law in the same form or in a restated from, the substantive operation and effect of that law shall continue uninterrupted.

Pub.L. No. 77, § 23, 1981 Ind. Acts 102. For this reason, the Court cannot agree with Smurfit's interpretation that the "tangible personal property" that has a resale requirement is only that which undergoes "enameling and plating." Before 1985, all tangible personal property falling under IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) has a resale requirement.

### 1985 & 1986

The ambiguity contained in the previous statute was eliminated by a second amendment, which modified the statute into its present form. In 1985 tire retreading was added, and the reference to resale was moved and isolated in subpart (ii). Pub.L. No. 76, § 8, 1985 Ind. Acts 104. The current definition of "wholesale sales" reads:

> (c)(1) "Wholesale sales" means any sale described in this subsection in which the purchaser is not a division, subdivision, agency, instrumentality, unit, or department of government:

(A) Sales of tangible personal property (except capital assets or depreciable assets of the seller) for resale in the form in which it was purchased.

(B) Sales of tangible personal property which is to be directly consumed in direct production by a purchaser in the business of producing tangible personal property by manufacturing, processing, refining, repairing, mining, agriculture, or horticulture.

(C) Sales of tangible personal property to be incorporated as a material or integral part of tangible property produced by a purchaser in the business of manufacturing, assembling, constructing, refining, or processing.

(D) Receipts from industrial processing or servicing, including:

(i) tire retreading; and

(ii) the enameling and plating of tangible personal property which is owned and *is to be sold* by the person for whom the servicing or processing is done, either as a complete article or incorporated as a material, or an integral or component part of tangible personal property produced *for sale* by such person in the business of manufacturing, assembling, constructing, refining, or processing.

(E) Sales of drugs, medical and dental preparations, and other similar materials to be directly consumed in professional use by doctors, hospitals, embalmers, and tonsorial parlors.

(F) Sales of tangible personal property to be directly consumed by the purchaser in the business of industrial cleaning.

(G) Sales of tangible personal property to be directly consumed by the purchaser directly in the business of rendering public utility service.

IND.CODE ANN. § 6–2.1–2–1(c) (West 1989) (emphasis added). The 1985 Act also defined tire retreading as the processing of "tangible personal property" for sales tax purposes under IND.CODE ANN. § 6–2.5–5–3. Pub.L. No. 76, § 9, 1985 Ind. Acts 104. Unlike the 1981 recodification statute, the 1985 Act does not contain a saving clause that would indi-

cate the new changes were merely grammatical and not substantive.

■ The Department contends that resale is a requisite for wholesale sales treatment. They stress the language of IND.CODE ANN. § 6–2.1–2–1(c)(1)(D)(ii) alluding to ultimate sales. Thus, the Department concedes that Smurfit's activities meet the criteria for wholesale sales when there is a subsequent sale. Without such a resale, however, the Department denies such treatment. In that latter case, the Department treats taxpayers as a service provider and taxes them at the 1.2% rate. As was the case for 1984, the issue presented for 1985 and 1986 is whether IND.CODE ANN. § 6–2.1–2–1(c)(1)(D), which defines receipts from industrial processing and servicing as wholesale sales, contains a resale requirement. This Court holds that it does not.

The Department argues that the reference to resale provided in (c)(1)(D)(ii) as to "enameling and plating" should also be applied to Smurfit's operations. Such an expansive interpretation would require a rewriting of the statute. The reference to resale applies only to a specific type of industrial processing—enameling and plating—an activity that has been isolated into its own subpart. The Department argues that the resale requirement contained in paragraph (ii) should be construed to apply not only to that paragraph, but to (D) generally. They stress that paragraph (ii) uses the same "servicing or processing" language that is contained in section (D).

■■ While persuasive in light of the history of this statute, the Department's argument dims under the rules of statutory interpretation. Courts are not free to assume that the legislature's use of language in one subsection are applicable to a separate and distinct subsection:

It is an elementary rule of statutory construction, that when a definite provision is made with reference to one particular subdivision of a section of the law dealing with the identical subject matter as the other subdivisions thereof and a similar reference is omitted from the other subdivisions thereof as well as from all of the rest of the section, the particular reference is in-

tended to apply solely to the subdivision in which it is contained and to exclude its application from all of the rest. *Cannon v. Towner,* 188 Misc. 955, 70 N.Y.S.2d 303, 312 (Supreme Court, Special [T]erm, 1947). See also: *Kirkpatrick v. Stelling,* 36 Cal. App.2d 658, 98 P.2d 566, 574 (1940), appeal dismissed, 311 U.S. 607, 61 S.Ct. 29, 85 L.Ed. 384, (1940), reh. den., 311 U.S. 726, 61 S.Ct. 130, 85 L.Ed. 473 (1940); *State ex rel. White v. Grant Superior Court* (1930), 202 Ind. 197, 209–210, 172 N.E. 897, 901, 71 A.L.R. 1354. *Romack v. State,* 446 N.E.2d 1346 (Ind.Ct. App.1983) (citing *Highland Sales Corp. v. Vance,* 244 Ind. 20, 25–26, 186 N.E.2d 682, 685 (Ind.1962)). Furthermore, Indiana law is clear that a court may construe and interpret a statute only if it is ambiguous. *Shoup Buses, Inc. v. Department of State Revenue,* 635 N.E.2d 1165, 1167–68 (Ind. Tax Ct.1994). The Indiana Supreme Court consistently has held that there is no need to apply the rules of statutory construction when a statute is unambiguous. *Mitchell v. State,* 659 N.E.2d 112, 114–115 (Ind.1995). A clear and unambiguous statute must be read to "mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted." *Department of State Revenue v. Horizon Bancorp,* 644 N.E.2d 870, 872 (Ind.1994). The "words and phrases" of such a statute "shall be taken in their plain, ordinary, and usual sense." *State Board of Tax Comm'rs v. Jewell Grain Company, Inc.,* 556 N.E.2d 920, 921 (Ind.1990).

■ Unlike the statute for 1984, IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) is unambiguous after the 1985 amendments. Although the previous versions of this statute have contained a resale requirement for all servicing and processing, the latest amendment isolated that requirement into a distinct subsection. Where the language of a statute is clear and unambiguous, "courts may not substitute language they feel the legislature intended." *Romack* at 1353. Accordingly, this Court will read the subsections of IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) independently. When this is done, the resale requirement con-

tained in subparagraph (ii) may not be expanded beyond the parameters of (ii). If the restrictions in (ii) do not apply to (i), they certainly do not apply to subsection (D) in general. Given a plain and obvious reading, subparagraphs (i) and (ii) are only examples of the application of subsection (D). They pertain to two clearly independent types of "industrial processing or servicing", which are separate and distinct from each other. Only "industrial processing or servicing" that involves enameling and plating, and which falls under IND.CODE ANN. § 6–2.1–2–1(c)(1)(D)(ii), has a resale requirement. As such, Smurfit has no resale requirement for 1985 and 1986.

### CONCLUSION

For 1984, this Court holds that IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) contains a resale requirement. Therefore, the Department's determination is AFFIRMED for 1984, and the Court holds that the Department is entitled to judgment as a matter of law. The Court GRANTS summary judgment in favor of the Department and against Smurfit. Smurfit, therefore, will get no refund for the amount of tax paid in 1984.

This Court holds that IND.CODE ANN. § 6–2.1–2–1(c)(1)(D) contains no resale requirement following the 1985 amendments. After 1984, Smurfit is entitled to the lower rate on its gross income tax, even when its products are ultimately given away. For 1985 and 1986, the Department's determination is REVERSED, and the Court holds that Smurfit is entitled to judgment as a matter of law. The Court GRANTS summary judgment in favor of Smurfit and against the Department. Smurfit, therefore, is entitled to a refund for the amount of tax erroneously paid for the years 1985 and 1986.