**UNIDEN AMERICA CORPORATION,**
Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9604–TA–00035.

Tax Court of Indiana.

Oct. 6, 1999.

---

Larry J. Stroble, John T. Bailey, Barnes & Thornburg, Indianapolis, IN, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Petitioner Uniden America Corporation (Uniden) appeals the Letter of Findings issued by the Indiana Department of State Revenue (Department) denying in part Uniden's protest of the Department's proposed assessment of Indiana gross income

tax. The sole issue for consideration in Uniden's partial motion for summary judgment is whether certain interstate sales of Uniden's products were subject to the gross income tax.

## FACTS AND PROCEDURAL HISTORY

The parties do not dispute the relevant facts. Uniden was incorporated under the laws of Indiana in 1970. For its fiscal years ending March 31 of 1990, 1991, 1992 and 1993 (the taxable years), Uniden filed Indiana corporate income tax returns on Form IT–20. *See* IND.CODE ANN. § 6–2.1–1–15 (West 1989) (defining "taxable year" as "the year that a taxpayer uses for purposes of filing his federal income tax return"); IND. ADMIN. CODE tit. 45, r. 1–1–172 (1996) (stating that form IT–20, used for annual gross income tax returns, is due on or before April 15 each year). During this period, Uniden's headquarters were located in Fort Worth, Texas. Its commercial domicile was also in Texas. The corporation engaged in the interstate sale and distribution of consumer and commercial electronic products such as cellular telephones, pagers, two-way radios, cordless telephones and marine radios.

Sales to Indiana customers during the taxable years totaled $34,317,533. Products were shipped from locations outside of Indiana to in-state customers (Indiana destination sales). Orders for the products were placed by mail or fax with Uniden's sales office in Texas. Once the orders were received and accepted by the Texas office, products were shipped directly by common carrier from Uniden's warehouse in Texas to the Indiana customers. The standard sales terms between Uniden and its customers with respect to the Indiana destination sales provided for delivery F.O.B. Uniden's warehouse, with title and risk of loss passing to the buyer upon delivery by Uniden to the carrier. These sales did not originate from, were not channeled through and were not otherwise associated with or facilitated by any Indiana situs of Uniden.[1]

The Department completed an audit of Uniden's gross income for the taxable years on July 28, 1994. On September 21, 1994, the Department issued four Notices of Proposed Assessment to Uniden—one for each of the taxable years. The notices indicated that Uniden owed the Department a total of $366,263.89 in gross income taxes, penalties and interest. On November 16, 1994, Uniden filed with the Department a protest against the proposed assessment. The Department conducted a hearing on the proposed assessment on June 29, 1995. On October 31, 1995, the Department issued a Letter of Findings granting the protest in part and denying the protest in part.

Uniden filed this original tax appeal on April 24, 1996. On February 27, 1997, Uniden filed a motion for partial summary judgment, along with a brief in support thereof.[2] The Department filed a memorandum in opposition to the motion for

1. Uniden did operate a service center in Indiana during the taxable years. The service center repaired products that had been previously sold to Uniden's customers. However, the service center was not connected to or associated with the Indiana destination sales. Therefore, the presence of the service center does not affect the Court's analysis of the issue in this case.

2. Uniden's petition initiating this original tax appeal raises two additional issues not addressed by the partial motion for summary judgment: (1) whether the lower rate of gross income tax should be applied to the sale of repair parts by its service center located in Indiana, *see* IND.CODE ANN. § 6–2.1–2–3 (West 1989); and (2) whether the Commerce Clause of the United State Constitution, *see* U.S. CONST. art. I, § 8, cl. 3, prohibited application of Indiana's gross income tax to sales of repair parts or replacement units by Uniden from its Indiana service center to customers located out-of-state. According to Uniden's motion for partial summary judgment, the parties have resolved the first issue by means of a supplemental audit. However, the second issue remains in dispute and should be addressed at trial if not resolved prior to a trial date.

partial summary judgment and a cross-claim for summary judgment on April 14, 1997. On April 28, 1997, the Court held a hearing on the motion. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

On appeal, this Court reviews final determinations by the Department *de novo*. *See* IND. ADMIN. CODE § 6–8.1–5–1(h) (West Supp.1998); *Cooper Indus., Inc. v. Indiana Dep't of State Revenue*, 673 N.E.2d 1209, 1211 (Ind.Tax 1996). Summary judgment is only appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* IND. T.R. 56(C); *Jefferson Smurfit Corp. v. Indiana Dep't of State Revenue*, 681 N.E.2d 806, 807 (Ind.Tax Ct.1997). Summary judgment is particularly appropriate when the issue before the Court involves the application of the law to undisputed facts. *See id.* Cross motions for summary judgment do not alter this standard. *See id.*

### Discussion

"Gross income" is defined in part as "all the gross receipts a taxpayer receives . . . from trades, businesses, or commerce. . . ." IND.CODE ANN. § 6–2.1–1–2(a)(1) (West 1989). However, IND.CODE ANN. § 6–2.1–1–2(c)(6) (West 1989) provides the following exclusion from the definition of gross income:

(c) The term "gross income" does not include:

\* \* \*

(6) gross receipts received by corporations incorporated under the laws of Indiana from a trade or business situated and regularly carried on at a legal situs outside Indiana or from activities incident to such trade or business (including the disposal of capital assets or other properties which were ac-quired and used in such trade or business)[.]

As applied to a taxpayer, the term "receipts" is defined as "the gross income in cash notes, credits, or other property that is received by the taxpayer or a third party for the taxpayer's benefit." IND. CODE ANN. § 6–2.1–1–10 (West 1989 & Supp.1999) (amended 1997). Indiana imposes a gross income tax pursuant to IND. CODE ANN. § 6–2.1–2–2, which provides in relevant part:

(a) An income tax, known as the gross income tax, is imposed upon the receipt of:

(1) the entire taxable gross income of a taxpayer who is a resident or a domiciliary of Indiana; and

(2) the taxable income derived from activities or businesses or any other sources within Indiana by a taxpayer who is not a resident or a domiciliary of Indiana.

A taxpayer's "taxable gross income" includes all gross income not exempted less all permitted deductions. *See* IND.CODE ANN. § 6–2.1–1–13 (West 1989).

Uniden contends that the plain language of section 6–2.1–1–2(c)(6) prohibits imposition of the gross income tax upon the Indiana destination sales. "The court's foremost goal in construing a statute is to give effect to the true intent of the legislature. The true intent of the legislature is best evidenced by the language in the statute." *Associated Ins. Cos., Inc. v. Indiana Dep't of State Revenue*, 655 N.E.2d 1271, 1273 (Ind.Tax 1995) (citations omitted), *review denied*, 685 N.E.2d 51 (Ind.1997). Further, "[i]t is a well established rule of statutory construction that words and phrases shall be given their plain, ordinary, and usual meaning." *Koufos v. Indiana Dep't of State Revenue*, 646 N.E.2d 733, 736 (Ind.Tax 1995) (citations omitted). Finally, "[t]o authorize a collection of gross income tax, a transaction must come clearly within the relevant statutory provisions. In case of doubt, the statute will be construed against the state

and in favor of the taxpayer." *Chrome Deposit Corp. v. Indiana Dep't of State Revenue,* 557 N.E.2d 1110, 1112 (Ind.Tax 1990), *aff'd, adopted and incorporated by reference in* 578 N.E.2d 643 (Ind.1991). Thus, in the present case, the Court must first examine the text of section 6–2.1–1–2(c)(6) to ascertain whether the General Assembly ·intended to exclude from the definition of gross income transactions such as the Indiana destination sales. If the language of the statute is ambiguous, the Court will resolve all doubts in favor of the taxpayer.

■ A plain and ordinary reading of section 6–2.1–1–2(c)(6) suggests that Uniden's income from the Indiana destination sales is not subject to the gross income tax. For purposes of the Court's analysis, the key issue is whether the "gross receipts" received by Uniden from the Indiana destination sales were derived from a "trade or business situated and regularly carried on at a legal situs outside Indiana." As noted *supra,* the Indiana destination sales were not connected with Indiana in any significant manner: (1) Uniden's corporate headquarters and commercial domicile were in Texas; (2) orders from Indiana customers were sent to Texas by mail or fax (i.e., Uniden had no physical sales presence in Indiana with regard to the Indiana destination sales); and (3) once received and accepted, orders were shipped from out-of-state warehouses to Indiana by common carrier, with title and risk passing at the time the products were picked up by the common carrier. Considered together, these facts indicate that Uniden's income from the Indiana destination sales was derived from trade or business activities taking place and carried on at a legal situs beyond Indiana's borders.

The Department insists that Uniden's gross receipts from its Indiana destination sales qualify as taxable gross income, because the income is derived from an Indiana source. The Department, in its Letter of Findings and in its brief on appeal, relies upon the case *Indiana Department of State Revenue v. Frank Purcell Walnut Lumber Co.,* 152 Ind.App. 122, 282 N.E.2d 336 (1972) to support its position. In *Purcell,* the taxpayer-lumber company applied for and was denied a refund of gross income taxes. The taxes arose out of the company's interstate sales of logs and timber. The lumber company was an Indiana corporation authorized to do business in Kansas City, Kansas, where the company maintained its plant and office and conducted its business. During the fiscal years at issue, 17% to 34% of the company's gross income was generated by sales to its sole shareholder, an Indiana corporation named Amos–Thompson Corporation.

The *Purcell* court examined IND.CODE ANN. § 6–2–1–1(m) (Bobbs–Merrill 1971) [hereinafter referred as section 1(m)], the predecessor statute to section 6–2.1–1–1. Section 1(m) read in relevant part:

> That with respect to individuals resident in Indiana and corporations incorporated under the laws of Indiana authorized to do and doing business in any other state and/or foreign country, the term "gross income" shall not include gross receipts received from sources outside the state of Indiana in cases where such gross receipts are received from a trade or business situated and regularly carried on at a legal situs outside the state of Indiana, or from activities incident thereto (including the disposal of capital assets or other properties which had been theretofore acquired or used in carrying on such trade or business).

The court first noted that, to qualify for the exclusion, "the corporation must be incorporated under the laws of Indiana, doing business in another state, and it must derive income from sources also outside the State of Indiana." *Purcell,* 282 N.E.2d at 340. According to the court, the "critical term" to interpret was the word "sources." *Id.* It then concluded that the plain and ordinary meaning of the term "sources" was "customers and buyers."

*Id.* In so doing, the *Purcell* court opined that allowing an Indiana corporation an exclusion from the gross income tax for sales to Indiana customers residing in the state would be an "absurdity" not intended by the legislator. *See id.* at 340–41. Therefore, because the source of the income in question was from an in-state customer, another Indiana corporation, the exclusion in section 1(m) did not apply. *See id.* at 341.

In 1981, the General Assembly recodified the gross income tax statutes, altering the disputed text of section 1(m). *See* 1981 Ind. Acts, Pub.L. 77. The quoted language from section 1(m) has been replaced by section 6–2.1–1–2(c)(6), which, as Uniden emphasizes, does not include the term "sources." Rather, under section 6–2.1–1–2(c)(6), nontaxable gross receipts are those "from a trade or business situated and regularly carried on at a legal situs outside Indiana or from activities incident to such trade or business." Unlike section 1(m), section 6–2.1–1–2(c)(6) does not require that the gross receipts qualifying for the exclusion be "received from sources outside the state of Indiana." Because the *Purcell* court's decision was based upon an interpretation of the term "sources" in section 1(m) and the term is not used in section 6–2.1–1–2(c)(6), the Department's reliance on the opinion in *Purcell* is misplaced.[3]

The Department contends that the General Assembly, by means of an uncodified savings clause, never intended to make substantive changes to the meaning of section 1(m) in recodifying the statute in its present form. Specifically, the savings clause, 1981 Acts, P.L. 77, § 23 provides: "This act is intended to be a codification

and restatement of applicable or corresponding provisions of the laws repealed by this act. If this act repeals and reenacts a law in the same form or in a restated form, the substantive operation and effect of that law shall continue uninterrupted." Therefore, according to the Department, the lack of a specific reference to the term "sources" in section 6–2.1–1–2(c)(6) is not significant. Moreover, the Department believes that *Purcell* serves as persuasive precedent because "in general the [*Purcell*] court found no difficulty with the concept that Indiana should be able to tax the receipts from a sale between an Indiana buyer and an Indiana seller." (Resp't Br. at 9).

 The Court disagrees with the Department's position. As noted previously, the Court's objective is to give effect to the true intent of the legislature. As a general principle, "[s]tatutory language is deemed intentionally chosen by the legislature to give effect to the meaning of an act." *Caylor–Nickel Clinic v. Indiana Dep't of State Revenue,* 569 N.E.2d 765, 769 (Ind.Tax 1991), *aff'd,* 587 N.E.2d 1311 (Ind.1992). Where a savings clause has been enacted as part of a recodification act, the Court will not presume that the legislature intended to effect a substantive change in the law if the altered statutory provision was made merely to clarify the legislature's original intention. *See Johnson County Farm Bureau Coop. Ass'n, Inc. v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 585 (Ind.Tax 1991), *aff'd, adopted and incorporated by reference,* 585 N.E.2d 1336 (Ind.1992). The Court will look to the nature and purpose of the statute to determine the legislature's in-

---

3. INDIANA ADMIN. Code tit. 45, r. 1–1–120(2)(e) (1996) provides, "Sales made by an Indiana resident or corporation incorporated in Indiana, which sales originated from its out-of-state business branch, and where the goods are shipped directly to the buyer from an out-of-state location" are taxable in-shipments. However, the rule relies upon the *Purcell* decision for support. Therefore, to the extent that the holding in *Purcell* is incorrect or

inapplicable, the regulation does not control the outcome of the present case. *See Hutchison v. Indiana State Bd. of Tax Comm'rs,* 520 N.E.2d 1281, 1283 (Ind.Tax 1988) (holding that regulation is nullity where statute upon which regulation is based has been repealed; "[t]he agency cannot enlarge or vary the power given by the legislature or create a rule out of harmony with the statute.").

tent. *See id.* In so doing, the Court presumes that the legislature is aware of judicial interpretations of the statute in question. *See Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs,* 686 N.E.2d 954, 957–58 (Ind.Tax 1997) (citations omitted), *review denied.*

The Court presumes that, in recodifying the gross income tax statutes, the legislature was aware of the Court of Appeal's interpretation of section 1(m) in *Purcell.* Interpretation of the phrase "sources outside the state of Indiana" in section 1(m) was outcome determinative in *Purcell.* The *Purcell* court focused squarely on the fact that the taxpayer-lumber company, an Indiana corporation, sold its goods to Indiana "sources," i.e., "customers or buyers" from Indiana. *See Purcell,* 282 N.E.2d at 340–41. In recodifying the statute, the legislature intentionally left out the qualifying phrase "sources outside the state of Indiana." This deletion was more than a mere grammatical change. *See Jefferson Smurfit Corp. v. Indiana Dep't of State Revenue,* 681 N.E.2d 806, 809 (Ind. Tax 1997) (addition of comma after word "servicing" and "the" before word "enameling" in recodified statute, IND.CODE ANN. § 6–2.1–2–1(c)(1)(D), was grammatical and not substantive in light of savings clause). In recodifying section 1(m), the legislature did not reenact the exclusion in the same or a restated form.

This Court's opinion in *Sangralea Boys Fund v. State Board of Tax Commissioners,* 686 N.E.2d 954 (Ind.Tax 1997) is instructive. In *Sangralea,* the Court interpreted a recodified property tax exemption, IND.CODE ANN. § 6–1.1–10–16 (West 1989) (amended 1993, 1995, 1997 & 1998), for buildings "owned, occupied, and used by a person for ... charitable purposes." A predecessor statute had exempted buildings from property taxes if the buildings were "used and set apart ... for charitable purposes ... provided the same is owned and actually occupied by the institution, individual or corporation using it for such purpose." IND.

CODE ANN. § 64–201 (Burns 1971). The recodification of the exemption statute in 1975 included an uncodified savings clause similar to that in the present case. In *Sangralea,* the State Board argued that section 6–1.1–10–16 required a unity of ownership, occupation, and use of a piece of property by the party seeking the tax exemption. According to the State Board, because Sangralea leased the subject property to other not-for-profit entities, which in turn carried out Sangralea's charitable functions, it was not entitled to the exemption.

The Court in *Sangralea* first observed that courts had liberally construed the prior statute to allow charities flexibility in choosing the best methods for carrying out their missions. *See Sangralea,* 686 N.E.2d at 957. Next, the Court determined that, by removing the word "actually" from the recodified statute and reorganizing the statute's wording, "the legislature did not reenact the law in the same or in a restated form. Instead, the legislature eased the restrictions contained in the 1971 version of the statute." *Id.* In adopting the new language, the legislature had demonstrated a "clear intent" to approve the judicial interpretations focusing on use of property for charitable purposes. *Id.*

As it did with the prior statute in *Sangralea,* the legislature in this case eliminated significant language in the recodified statute and reorganized the wording of the prior statute. Section 1(m) was recodified without the phrase deemed outcome determinative in *Purcell.* Unlike *Sangralea,* where the Court determined that a recodified property tax exemption had been substantively changed to approve prior case law, in the present case it seems that the legislature's recodified section 1(m) demonstrates disapproval of prior case law, i.e., the *Purcell* decision. The new language went beyond merely clarifying section 1(m) and was not a simple grammatical change. Exclusion of the phrase "sources outside the state of Indiana" from the new statute, section 6–2.1–1–2(c)(6), substantially al-

tered the meaning of section 1(m) and thus substantively changed the exclusion. In effect, the new language ignores the "source" of a resident Indiana corporation's gross receipts. It does not matter under the recodified exclusion whether the transaction involves a customer or buyer who is domiciled in Indiana, as long as the income meets the other requirements of the exclusion.[4]

■ "Statutes applicable to the same subject matter should be construed in harmony with one another." *Sangralea,* 686 N.E.2d at 958. Indiana imposes a gross income tax upon the receipt of "the taxable gross income derived from activities or businesses *or any other sources within Indiana* by a taxpayer who is not a resident or a domiciliary of Indiana." IND. CODE ANN. § 6–2.1–2–2(a)(2) (emphasis added). The 1981 recodification did not alter the reference in the prior version of this section, which provided, "There is hereby imposed a tax . . . upon the receipt of gross income derived from activities or businesses *or any other source within the state of Indiana,* of all persons who are not residents of the state of Indiana. . . ." IND.CODE ANN. § 6–2–1–2 (Bobbs–Merrill 1978) (emphasis added).

In *Indiana–Kentucky Electric Corporation v. Indiana Department of State Revenue,* 598 N.E.2d 647, 663 (Ind.Tax 1992), this Court interpreted the meaning of the term "sources" as the term is used in section 6–2.1–2–2(a)(2). Specifically, the Court identified the following three-part test for determining whether income is derived from an Indiana source (or "tax situs"):

> [T]he court must (1) isolate the transaction giving rise to the income, the critical transaction, (2) determine whether [the out-of-state taxpayer] has a physical presence in the taxing state or has significant business activities within the

taxing state, a "business situs," and (3) determine whether the Indiana activities are related to the critical transaction and are more than minimal, not remote or incidental to the total transaction, the "tax situs."

*Id.* As used in section 6–2.1–2–2(a)(2), the term sources has been intentionally retained by the legislature in the recodified gross income tax imposition statute and its meaning has been refined by this Court. The term's meaning as articulated in the above test is consistent with prior case law dating before the 1981 recodification. *See id.* at 662–63 (cases cited therein).

■ The term sources as interpreted by this Court in *Indiana–Kentucky Electric* is not consistent with the *Purcell* court's interpretation of the term sources in the section 1(m) exclusion, which focuses on the domicile of the customer and not the relation of the transaction to the taxpayer's contacts and business activities within the state. Even if this Court were to read the term sources into the exclusion found in section 6–2.1–1–2(c)(6), the Court would likely interpret the term using the approach identified in *Indiana–Kentucky Electric. See LeSea Broad. Corp. v. State Bd. of Tax Comm'rs,* 512 N.E.2d 506, 508–09 (Ind.Tax 1987) (declining to follow Court of Appeal's precedent in applying IND. T.R. 5(B)(2) to taxpayer appeal), *aff'd,* 511 N.E.2d 1009. Thus, the Department's interpretation of section 6–2.1–1–2(c)(6) would result in dissimilar applications of the same concept, the "sources" of gross receipts, in two related gross income tax statutes. The Court endeavors to construe statutes so as to prevent absurd results. *See Faris Mailing, Inc. v. Indiana Dep't of State Revenue, Sales and Use Tax Div.,* 557 N.E.2d 713, 716 (Ind. Tax 1990).

For all of the above reasons, the Court finds that section 6–2.1–1–2(c)(6) excluded

---

4. This does not mean that Indiana either could or could not tax the gross receipts in question, only that Indiana has chosen not to do so. As Uniden has pointed out, "The actu-

al statutory language makes it clear that the Legislature has not seen fit to make the place of the customer controlling." (Pet'r Reply Br. at 4–5).

the gross receipts generated by Uniden's Indiana destination sales from the definition of gross income.

## CONCLUSION

The Department erroneously subjected Uniden's gross receipts from its Indiana destination sales to Indiana's gross income tax. As to the issue presently before the Court, the Department's final determination is REVERSED.[5] The Court hereby GRANTS Uniden's partial motion for summary judgment and DENIES the Department's cross-claim for summary judgment.

---

5. Because this case is resolved in Uniden's favor on statutory grounds, the Court need not address Uniden's constitutional claim that the commerce clause, U.S. CONST. art. I, § 8, cl. 3, prohibits application of the state's gross income tax to the Indiana destination sales. *See Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue*, 605 N.E.2d 1222, 1231–32 (Ind.Tax 1992) (noting that Court has duty not to enter upon consideration of a constitutional question where Court can perceive another ground on which to rest its decision).